Melody L. Sequoia, CA State Bar No. 309163
melody@sequoialawfirm.com
THE SEQUOIA LAW FIRM
530 Oak Grove Avenue, Suite 102
Menlo Park, California 94025
Telephone: (650) 561-4791
Facsimile: (650) 561-4817

Matthew C. Helland, CA State Bar No. 250451
helland@nka.com
NICHOLS KASTER, LLP
235 Montgomery Street, Ste. 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Additional Attorneys Listed on Signature Page

Attorneys for Plaintiff Jessica Day
and the putative class.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| Jessica Day, individually and on behalf of all others similarly situated, | **Case No.:** |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| GEICO CASUALTY COMPANY, GEICO INDEMNITY COMPANY, and GEICO GENERAL INSURANCE COMPANY, | **(1) Breach of Contract** |
| | **(2) Unjust Enrichment** |
| Defendants. | **(3) Frustration of Purpose** |
| | **(4) Violation of California Business and Professions Code § 17500** *et seq.* |
| | **(5) Violation of California Business and Professions Code § 17200** *et seq.* |

## CLASS ACTION COMPLAINT

Plaintiff Jessica Day ("Plaintiff"), by and through her attorneys and on behalf of herself and all others similarly situated, hereby submits this Class Action Complaint against Defendants GEICO Casualty Company, GEICO Indemnity Company, and GEICO General Insurance Company ("GEICO" or "Defendants"), and alleges as follows:

## PRELIMINARY STATEMENT

1.      This case is filed to end GEICO's practice of unfairly profiting from the global COVID-19 pandemic. As of the date of this filing, the United States has confirmed over 28 million coronavirus cases. The State of California alone has over 3.5 million confirmed cases.

2.      Beginning in March 2020, states across the country, including California, began to enforce strict social distancing measures to slow the spread of COVID-19. This included closing schools and businesses and instituting strict "stay-at-home" orders that prevented most individuals from leaving their homes for extended periods of time.

3.      While many companies, industries, and individuals have suffered financially as a result of the COVID-19 pandemic, auto insurers like GEICO have scored a windfall. Not surprisingly, as a result of state-wide social distancing and stay-at-home measures, there has been a dramatic reduction in driving, and an attendant reduction in driving-related accidents. This decrease in driving and accidents has significantly reduced the number of claims that auto insurers like GEICO have paid, resulting in a drastic and unfair increase in GEICO's profits at the expense of its customers. According to its parent company, Berkshire Hathaway, GEICO reported pretax earnings of $3.428 billion in 2020. That is more than double GEICO's earnings over the same period in 2019.

4.      One published report calculates, very conservatively, that at least a 30% average refund of paid premiums would be required to make up for the excess amounts paid by consumers for just the period between mid-March and the end of April of 2020. Despite full knowledge of these facts, GEICO has failed to issue refunds. The company's short-lived "GEICO Giveback" program was woefully inadequate to compensate its customers for overpayments resulting from COVID-19. The program applied a 15% discount on new and

renewal auto insurance policies from April to October 2020. But it did not apply any discount to the premiums that customers already paid and continued to pay on policies already existing at the start of the COVID-19 pandemic. And even with respect to new and renewal policies, the 15% credit fell well short of what has been very conservatively estimated as an adequate refund. Despite the inadequacy of its refund program, GEICO falsely advertised to consumers that it was "passing [its COVID-related] savings on" to its customers.

5.      To remedy Defendants' unlawful conduct, Plaintiff brings this class action alleging violations of California state law. Plaintiff seeks disgorgement of the ill-gotten gains obtained by GEICO to the detriment of its customers, all available damages, punitive damages, declaratory and injunctive relief, and all other available relief.

## JURISDICTION

6.      This Court has jurisdiction under 28 U.S.C. § 1332(d) because this is a class action in which the amount in controversy is over $5,000,000 exclusive of interest and costs, and at least one member of the class is a citizen of a State different from Defendants.

## VENUE

7.      Venue is proper in the Northern District of California under 28 U.S.C. § 1391 because Defendants reside in this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## INTRADISTRICT ASSIGNMENT

8.      Pursuant to Civil L.R. 3-2(c) and (e), and 3-5(b), this action is properly assigned to the San Jose Division of the Northern District of California because a substantial portion of the events or omissions giving rise to the dispute occurred in Monterey County.

## PARTIES

9.      Defendants GEICO Casualty Company, GEICO Indemnity Company, and GEICO General Insurance Company are Maryland corporations with their principal place of business in Chevy Chase, Maryland. Defendants sell personal automobile insurance in states around the country, including California. GEICO issued personal auto, motorcycle, and/or RV insurance policies to Plaintiff and the members of the putative class during the relevant time

period. Defendants are affiliated companies, jointly participated in, and are jointly responsible for the unlawful conduct described herein. All three Defendants market collectively under the trademark "GEICO."

10.     Plaintiff is an adult resident of Salinas, California. Plaintiff has held personal auto insurance policies purchased from GEICO during the time period relevant to this lawsuit. As described in more detail herein, as a result of the global COVID-19 pandemic and corresponding drop in automobile use and traffic, the credit given by GEICO is wholly inadequate to compensate Plaintiff for her overpayments.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

**A.     The Global COVID-19 Pandemic and State-Mandated Social Distancing Measures**

11.     In late December 2019, a novel coronavirus known as SARS-CoV-2 began to spread around the globe. The virus causes a disease called COVID-19. By mid-January, cases of COVID-19 were confirmed in the United States.

12.     By mid-March, there were thousands of confirmed cases of COVID-19 across the United States and hundreds in the State of California alone.

13.     Like many states around the country, California responded to the worsening COVID-19 crisis with measures designed to increase, and often mandate, social distancing in order to slow the spread of the virus.

14.     On March 4, 2020, Governor Gavin Newsom proclaimed a State of Emergency in California as a result of COVID-19. In the following weeks, the state rolled out a series of social distancing measures, including, for example, recommendations that older adults and those with elevated risk should self-isolate.

15.     On March 19, 2020, Governor Newsom instituted a statewide stay-at-home order,[1] making California among the first states to establish such an order. With some exceptions, the order mandated "all individuals living in the State of California to stay home."[2]

---

[1] Executive Order N-33-20 (Mar. 19, 2020), https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf.
[2] *Id.* ¶ 1.

16.     In the time since Governor Newsom first instituted the stay-at-home order, California's progress toward reopening has been halting, and additional stay-at-home orders have been imposed in response to the spread of COVID cases.

**B.     GEICO Has Obtained a Windfall Due to the Dramatic Decrease in Automobile Use and Traffic Caused by COVID-19**

17.     Although businesses across the United States have almost uniformly suffered as a result of COVID-19, state-wide stay-at-home orders, and other social distancing measures, the auto insurance industry has benefited. In fact, auto insurance—a $250 billion industry—stands to secure a windfall from COVID-19-related restrictions. The reason is simple. As one report put it: "With shelter-in-place restrictions and business closings, most people stopped driving or reduced their driving dramatically. With fewer cars on the road, there were dramatically fewer accidents. Fewer motor vehicle accidents mean fewer auto insurance claims."[3]

18.     Beginning in mid-March of 2020, the number of miles driven by individuals has dropped dramatically because of COVID-19. This includes the State of California. Through the use of cell phone location data, it has been reported that vehicle miles traveled in California dropped significantly from their January 2020 average in March and April of 2020:[4]

| Date Range | Decrease in Miles Traveled |
|---|---|
| March 15 - March 21 | -53% |
| March 22 - March 28 | -72% |
| March 29 - April 4 | -74% |
| April 5 - April 11 | -77% |
| April 12 - April 18 | -74% |
| April 19 - April 25 | -71% |

[3] *See* Center for Economic Justice & Consumer Federation of America, Personal Auto Insurance Premium Relief in the COVID-19 Era at 5 (May 7, 2020) ("CEJ/CFA Report"), https://consumerfed.org/wp-content/uploads/2020/05/Auto-Insurance-Refunds-COVID-19-Update-Report-5-7-20.pdf.
[4] *See id.* at 6-8.

1   Upon information and belief, decreases in pre-COVID miles traveled continued through the

2   end of 2020, and will continue for the foreseeable future.[5]

3       19.     Automobile accidents have also decreased. According to the Road Ecology

4   Center at the University of California, Davis, traffic collisions, including those involving

5   injuries or fatalities, dropped by roughly half after California instituted its stay-at-home order.[6]

6       20.     This dramatic decrease in driving and auto accidents allowed auto insurance

7   companies, including GEICO, to unfairly profit at the expense of their customers during the

8   COVID-19 pandemic. Auto insurance rates, including those set by GEICO, are intended to

9   cover the claims and expenses that they expect to occur in the future, extrapolated from

10  historical data. Thus, as explained in the joint report by the Center for Economic Justice and the

11  Consumer Federation of America:

12          Because of COVID-19 restrictions, the assumptions about future claims
            underlying insurers' rates in effect on March 1 became radically incorrect
13          overnight. When roads emptied, the frequency of motor vehicle accidents and
            insurance claims dropped dramatically and immediately. The assumptions in
14          insurers' rates covering time-frames from mid-March forward about future
            frequency of claims became significantly wrong when the roads emptied
15          because of Stay-At-Home orders and business closures starting in mid-March.
            The then-current rates became excessive not just for new policyholders going
16          forward, but also for existing policyholders whose premium was based on now-
            overstated expectation about insurance claims.[7]
17
18      21.     The excessive premiums collected and not refunded by GEICO during the

19  COVID-19 pandemic have led to a substantial windfall in profits. According to its parent

20  company, Berkshire Hathaway, GEICO reported pretax earnings of $ $3.428 billion in 2020.

21  That is more than double GEICO's earnings over the same period in 2019.

22  _____

23  [5] *See id.* at 2; *see also* Center for Economic Justice & Consumer Federation of America, Auto
    Insurance Refunds Needed as New Data Show Crashes Remain Well Below Normal Due to
24  Pandemic (Dec. 22, 2020), https://consumerfed.org/press_release/auto-insurance-refunds-
    needed-as-new-data-show-crashes-remain-well-below-normal-due-to-pandemic-23-fewer-
25  accidents-in-september-and-october/.
    [6] Fraser Shilling and David Waetjen, *Special Report: Impact of COVID19 Mitigation on
26  Numbers and Costs of California Traffic Crashes*, Road Ecology Center, UC Davis, Apr. 1,
    2020 (updated Apr. 15, 2020),
27  https://roadecology.ucdavis.edu/files/content/projects/COVID_CHIPs_Impacts_updated_415.p
    df.
28  [7] CEJ/CFA Report, *supra*, at 4.

5

**C.     GEICO Has Failed to Give Adequate Refunds to Plaintiff and Other Policyholders in California**

22.     According to conservative calculations by the Center for Economic Justice and the Consumer Federation of America based on motor vehicle accident data, at least a 30% minimum average premium refund to consumers would be required to correct the unfair windfall to auto insurance companies, including GEICO, just for the time period from mid-March through the end of April 2020.[8]

23.     At all relevant times, GEICO has been aware of the need to refund premiums in order to correct the unfair windfall it gained from policyholders in California as a result of the COVID-19 crisis. GEICO has likewise been aware of its excessive profits. Despite this, GEICO has failed to adequately return these profits to its customers.

24.     In spring 2020, GEICO announced the "GEICO Giveback." Under the program, GEICO gave customers a 15% credit on their personal auto insurance premiums, but only if they are new customers, or existing customers who renew their policy during the applicable time period. Specifically, the credit was given for six-month policies renewed or newly purchased for the period April 8, 2020 to October 8, 2020, and twelve-month policies renewed or newly purchased for the period April 8, 2020 to April 7, 2021. According to GEICO's website, the program has now ended.

25.     GEICO's credit program is inadequate to compensate its customers for the unfair windfall the company has gained as a result of COVID-19. For existing customers who renewed their policies, the credit does not apply at all to premiums that the customer paid on their previous policies. And even with respect to new and renewal policies, the 15% credit is nowhere near the minimum 30% average refund benchmark that has been conservatively estimated as an adequate refund for just the first the first two months of the pandemic.

26.     With full knowledge that its program was inadequate, GEICO falsely claimed to its customers that it was in fact providing substantial and full relief. For example, on its

---

[8] CEJ/CFA Report, *supra*, at 12-13.

website, GEICO falsely claimed that "shelter in place laws have reduced driving, and we are passing these savings on to our auto, motorcycle, and RV customers." Further, GEICO failed to disclose in this and other advertising the fact that the "GEICO Giveback" did not, in fact, pass the company's savings on to its customers; the fact and amount of its excessive profits caused by COVID-19; and the fact that its premiums are not based on an accurate assessment of risk during COVID-19.

27.    Not surprisingly, GEICO's refund program was met with immediate criticism. On April 13, 2020, the Consumer Federation of America gave GEICO's program a "D-" grade, which placed GEICO at or near the bottom of insurers receiving grades.[9] The CEJ/CFA report explained that GEICO's program "fails to match the relief to the relevant premium and policy," "doesn't provide relief for current policyholders," "fails to credit consumers for the current premium that has become excessive," and is "wrongly attempting to take credit for future – and in most cases distant future – rate reductions as if it were actually providing relief today to current policyholders."[10]

28.    In early February 2020, Plaintiff purchased a renewal auto insurance policy from GEICO for the period beginning on February 11, 2020 and ending on August 9, 2020. Plaintiff renewed again for the period beginning on August 10, 2020 and ending on February 10, 2021. Premiums were $871.20. With a "GEICO Giveback credit" of $130.68, Plaintiff paid $740.52 in premiums for that policy.

29.    During the time that Plaintiff was considering renewing her policy with GEICO, Plaintiff received advertisements, emails, and other information from GEICO representatives concerning the "Giveback." Plaintiff renewed her policy and did not cancel her policy with GEICO based on GEICO's failure to disclose to its customers the fact that the "GEICO

---

[9] *Report Card to Date on the $6.5 Billion+ Promised To Auto Insurance Customers as People Drive Less Due To COVID-19*, Consumer Federation of America (April 4, 2020), https://consumerfed.org/press_release/report-card-to-date-on-the-6-5-billion-promised-to-auto-insurance-customers-as-people-drive-less-due-to-covid-19/.
[10] CEJ/CFA Report, *supra*, at 16.

CLASS ACTION COMPLAINT

Giveback" did not, in fact, pass the company's savings on to its customers; the fact and amount of its excessive profits caused by COVID-19; and the fact that its premiums are not based on an accurate assessment of risk during COVID-19. Had GEICO disclosed these facts, Plaintiff would not have renewed her GEICO policy in the summer of 2020.

30.     GEICO's insurance policies, including the policies of Plaintiff and the members of the putative class, contain the following provision:

> 3.     CHANGES
>
> The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.
>
> We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, *your* policy will automatically include the broader coverage when effective in *your* state.
>
> The premium for each auto is based on the information we have in *your* file. *You* agree:
>
> (a) that we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.
>
> (b) that *you* will cooperate with us in determining if this information is correct and complete.
>
> (c) that *you* will notify us of any changes in this information.
>
> Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

31.     This provision vests GEICO with discretion to adjust premiums if the information on which those premiums is based changes or becomes incorrect.

32.     GEICO improperly exercised that discretion by failing to issue refunds of the now-excessive premiums.

33.     Plaintiff's policies described above were in effect during the time period during which most of the United States, including California, was significantly impacted by the global COVID-19 pandemic and during which stay-at-home orders, along with other measures and conditions, caused a widespread and dramatic decrease in automobile use and traffic. Despite

1    this, GEICO only gave Plaintiff an inadequate 15% credit on her August 2020 renewal policy

2    and no refund or credit for Plaintiff's previous six-month policy.

3         34.     Upon information and belief, thousands of other policyholders in California

4    have been injured by GEICO's policy and practice of failing to provide adequate refunds to

5    policyholders due to the COVID-19 pandemic.

6                            **CLASS ACTION ALLEGATIONS**

7         35.     Pursuant to Fed. R. Civ. P. 23(a) and 23(b), Plaintiff brings this action

8    individually and on behalf of all similarly situated individuals.

9         36.     The proposed class is defined as follows: All California residents who purchased

10   personal automobile, motorcycle, or RV insurance from GEICO covering any portion of the

11   time period from March 1, 2020 to the present.

12        37.     The members of the class are so numerous that joinder of all members is

13   impracticable. While the precise number of class members has not been determined at this time,

14   upon information and belief, there are thousands of individuals in the class. The identities of

15   the class members can be determined from GEICO's records.

16        38.     There are questions of law and fact common to the class that predominate over

17   questions solely affecting individual members.

18        39.     The common questions of law and fact include, but are not limited to:

19        a.   Whether GEICO has a common policy or practice of failing to provide

20             adequate refunds to policyholders due to the COVID-19 pandemic;

21        b.   Whether GEICO's refund program is inadequate;

22        c.   Whether GEICO violated the covenant of good faith and fair dealing;

23        d.   Whether the payment of full premiums by Plaintiff and the members of the

24             putative class is excused by frustration of purpose;

25        e.   Whether GEICO was unjustly enriched as a result of its failure to provide

26             adequate refunds to its customers;

27        f.   Whether GEICO falsely advertises that its refund program provides adequate

28             refunds to its customers;

g.  Whether GEICO's failure to provide adequate refunds to its customers is unlawful, unfair, and fraudulent;

h.  Whether GEICO has violated California consumer protection laws through its failure to provide adequate refunds to its customers and its failure to disclose the inadequacy of its refunds; and

i.  the proper measure and calculation of damages.

40.     The questions of law and fact listed above will yield common answers for Plaintiff and the class as to whether GEICO is liable for the alleged legal violations.

41.     Plaintiff's claims are typical of those of the members of the class. Plaintiff, like other class members, was subject to the unlawful practices described herein.

42.     Plaintiff will fairly and adequately protect the interests of the class and has retained counsel experienced in complex class action litigation.

43.     Class treatment is appropriate under Fed. R. Civ. P. 23(b)(2) because GEICO has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class.

44.     This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members. A class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy because, in the context of similar litigation, individual plaintiffs often lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to GEICO's policies and practices. There will be no difficulties in managing this action.

45.     In the alternative, class treatment is appropriate under Fed. R. Civ. P. 23(c)(4) because this is a case in which class adjudication of particular issues would serve the interests of judicial economy.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CAUSES OF ACTION**

**COUNT I**

**Breach of Contract - Violation of the Covenant of Good Faith and Fair Dealing**

**(On Behalf of Plaintiff and the Putative Class)**

46.     Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

47.     Under California law, a covenant of good faith and fair dealing is implied into every contract. A party is not permitted to do anything which will frustrate the other party's right to the benefits of the agreement. And where a contract vests one party with discretion affecting the rights of another party, the covenant requires that the discretion be exercised in good faith.

48.     Plaintiff and the members of the putative class purchased insurance contracts from GEICO.

49.     GEICO's insurance contracts give GEICO discretion to adjust premiums if the information upon which those premiums are based changes or becomes incorrect. That information changed and became incomplete and incorrect when the COVID-19 pandemic caused a substantial reduction of driving in California.

50.     GEICO exercised its contractual discretion in bad faith by failing to issue refunds of premiums. It would not have been within the contemplation of the parties at the time of contracting that GEICO would fail to refund premiums in the face of a global pandemic that drastically reduced driving in the state.

51.     GEICO's conduct frustrated Plaintiff's and the putative class's right to the reasonably expected benefits of the bargain. Those benefits include the reasonable expectation that insurance premiums will be based on an accurate assessment of risk, and that the insurer will treat its insureds honestly and fairly.

52.     Plaintiff and the members of the putative class have been injured as a direct and proximate result of GEICO's unlawful conduct.

1

2

3

## COUNT II

### Unjust Enrichment/Quasi-Contract

### (On Behalf of Plaintiff and the Putative Class)

4      53.      Plaintiff pleads this Count in the alternative to her other Counts herein.

5      54.      As a result of GEICO's failure to provide adequate refunds to its customers as

6   described herein, GEICO has been unjustly enriched.

7      55.      GEICO was enriched under circumstances that it cannot conscientiously retain

8   its gain at Plaintiff's and the putative class's expense.

9      56.      Plaintiff and the members of the putative class have been injured as a direct and

10   proximate result of GEICO's unlawful conduct.

11

## COUNT III

12

### Frustration of Purpose

13

### (On Behalf of Plaintiff and the Putative Class)

14      57.      Plaintiff restates and incorporates by reference the above paragraphs as if fully

15   set forth herein.

16      58.      A party's performance of a contract is excused when a basic purpose of that

17   party in making the contract, as recognized by both parties, is substantially or totally destroyed;

18   the frustrating event is not reasonably foreseeable; and the frustrating event is so severe as to

19   not be fairly regarded as among the risks assumed under the contract.

20      59.      At the time Plaintiff and the members of the putative class purchased auto

21   insurance policies from GEICO, the global COVID-19 pandemic and its full effects were not

22   reasonably foreseeable, and the risk of the pandemic was not among the risks assumed by

23   Plaintiff and the putative class under the policies.

24      60.      The parties knew that receiving insurance coverage at rates based on an accurate

25   assessment of risk was a principal purpose of the policies. As a result of the global COVID-19

26   pandemic, the related stay-at-home orders, and the drastic reduction in driving among the risk

27   pool, that purpose was substantially destroyed.

28

61.     Plaintiff and the members of the putative class seek a declaration that payment of full premiums is no longer required, and that GEICO must disgorge its unfair windfall from premiums paid to date.

**COUNT IV**

**Violation of the California False Advertising Law ("FAL")**

**Cal. Bus. & Prof. Code § 17500 *et seq*.**

**(On Behalf of Plaintiff and the Putative Class)**

62.     Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

63.     The FAL prohibits any "untrue or misleading" statement in advertising, including any statement made "over the Internet," which is known to be untrue or misleading, or which by the exercise of reasonable care should be known to be untrue or misleading. Cal. Bus. & Prof. Code § 17500.

64.     The FAL also prohibits omissions of material fact when the omissions are contrary to a representation made by the defendant, or where the defendant was obligated to disclose the omitted material facts.

65.     In advertising the "GEICO Giveback," GEICO made untrue and misleading statements, including the statement that "shelter in place laws have reduced driving, and we are passing these savings on to our auto, motorcycle, and RV customers." Further, GEICO failed to disclose the fact that the "GEICO Giveback" did not, in fact, pass the company's savings on to its customers, given the amount of its excessive profits caused by COVID-19 and the fact that its premiums are not based on an accurate assessment of risk during COVID-19. These omissions were directly contrary to GEICO's representation that it was passing the savings related to reduced driving on to its customers.

66.     GEICO had full and exclusive knowledge of each material fact that it omitted to disclose, and the company actively concealed those facts. Further, Plaintiff did not know the omitted material facts and, by the nature of those facts, Plaintiff could not have discovered the omitted facts.

67.     GEICO intended for Plaintiff and the members of the putative class to rely on GEICO's misrepresentations and omissions of material facts by remaining customers of GEICO, renewing existing insurance policies from GEICO, and buying new insurance policies from GEICO. And a reasonable consumer in Plaintiff's position would have so relied on GEICO's misrepresentations and omissions and would be likely to have been deceived.

68.     GEICO's conduct, as described herein, violates the FAL.

69.     Plaintiff and the members of the putative class have been injured as a direct and proximate result of GEICO's deceptive conduct in violation of FAL. Plaintiff and the members of the putative class paid premiums to GEICO and did not have those premiums refunded, and they purchased, renewed, and did not cancel their policies, as a result of GEICO's deceptive statements and omissions.

70.     Through its deceptive practices, GEICO has improperly obtained and continues to improperly obtain and retain money from Plaintiff and the members of the putative class.

71.     Plaintiff requests that this Court grant the relief enumerated below. Otherwise, Plaintiff and the members of the putative class may be irreparably harmed and/or denied an effective and complete remedy.

## **COUNT V**

### **Violation the California Unfair Competition Law ("UCL")**

### **Cal. Bus. & Prof. Code § 17200 *et seq*.**

### **(On Behalf of Plaintiff and the Putative Class)**

72.     Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

73.     Plaintiff and GEICO are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

74.     The UCL defines unfair competition to include any "unlawful, unfair, or fraudulent business act or practice," as well as any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

75.     By committing the acts and practices alleged herein, GEICO has engaged in unlawful, unfair, and fraudulent business acts and practices, as well as unfair, deceptive, untrue, and misleading advertising, in violation of the UCL.

76.     **Unlawful conduct:** GEICO has violated the UCL's proscription against engaging in unlawful conduct. More specifically, GEICO has violated the FAL as alleged in the above counts.

77.     **Unfair Conduct:** A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims. GEICO has violated the UCL's proscription against unfair business practices by, among other things:

    a.   failing to fully refund premiums with full knowledge of the amount and extent of their excess and the fact that they are not based on an accurate assessment of risk;

    b.   failing to refund premiums to the consumers who initially paid those premiums, and instead giving a credit only for new or renewal business, thereby intentionally using the global COVID-19 pandemic as a means to gain new business and obtain unfair economic advantage;

    c.   falsely claiming to its customers that it is providing substantial and full relief through its "Giveback" program and failing to disclose that the program does not, in fact, provide full relief; and

    d.   failing to disclose the fact that it is earning excessive profits, or the amount of those profits.

78.     There is no societal benefit from GEICO's conduct—only harm to consumers. GEICO has engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers, and the gravity of its conduct outweighs any alleged benefits attributable to such conduct.

79.     There were reasonably available alternatives to further GEICO's legitimate business interests, other than the conduct described herein.

80.     **Fraudulent Conduct:** A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

81.     GEICO's acts and practices constitute fraudulent business acts or practices because they have deceived Plaintiff and are highly likely to deceive members of the public.

82.     In advertising the "GEICO Giveback," GEICO made untrue and misleading statements, including the statement that "shelter in place laws have reduced driving, and we are passing these savings on to our auto, motorcycle, and RV customers." Further, GEICO failed to disclose the fact that the "GEICO Giveback" did not, in fact, pass the company's savings on to its customers, given the amount of its excessive profits caused by COVID-19 and the fact that its premiums are not based on an accurate assessment of risk during COVID-19. These omissions were directly contrary to GEICO's representation that it was passing the savings related to reduced driving on to its customers.

83.     Plaintiff and the members of the putative class paid premiums to GEICO and did not have those premiums refunded, and they purchased, renewed, and did not cancel their policies, as a result of GEICO's fraudulent conduct.

84.     **Unfair, Deceptive, Untrue, or Misleading Advertising:** GEICO's advertising of its "GEICO Giveback" constitutes unfair, deceptive, untrue, or misleading advertising under the UCL.

85.     Advertising is misleading under the UCL if members of the public are likely to be deceived.

86.     In advertising the "GEICO Giveback," GEICO made untrue and misleading statements, including the statement that "shelter in place laws have reduced driving, and we are passing these savings on to our auto, motorcycle, and RV customers." Further, GEICO failed to disclose the fact that the "GEICO Giveback" did not, in fact, pass the company's savings on to its customers, given the amount of its excessive profits caused by COVID-19 and the fact that its premiums are not based on an accurate assessment of risk during COVID-19. These

omissions were directly contrary to GEICO's representation that it was passing the savings related to reduced driving on to its customers.

87.    These statements and omissions were likely to deceive the public.

88.    Plaintiff and the members of the putative class paid premiums to GEICO and did not have those premiums refunded, and they purchased, renewed, and did not cancel their policies, as a result of GEICO's unfair and deceptive conduct.

89.    The injury caused by GEICO's failure to provide adequate refunds is substantial in light of very conservative calculations that a 30% minimum average premium refund to would be required to correct the unfair windfall just for the time period from mid-March through the end of April 2020.

90.    Plaintiff and the members of the putative class have been injured as a direct and proximate result of GEICO's conduct in violation of UCL.

91.    Through its practices, GEICO has improperly obtained and continues to improperly obtain and retain money from Plaintiff and the members of the putative class.

92.    Plaintiff therefore requests that this Court grant the relief enumerated below. Otherwise, Plaintiff and the members of the putative class may be irreparably harmed and/or denied an effective and complete remedy.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the putative class, prays for relief as follows:

A.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23;

B.    The appointment of Plaintiff as class representative and her counsel as class counsel;

C.    A declaration that the practices complained of herein are unlawful and violate the laws of California alleged herein;

D.    An injunction against Defendants from engaging in the unlawful practices complained of herein;

E.   Awarding Plaintiff and the members of the putative class their damages in an amount to be determined at trial, including compensatory damages, consequential damages, punitive damages, and any other damages provided under relevant laws;

F.   Disgorgement of, restitution of, and/or imposing a constructive trust upon, the ill-gotten gains derived by Defendants from their unjust enrichment;

G.   An order awarding Plaintiff and the class attorneys' fees, costs, and expert costs;

H.   An order awarding Plaintiff and the members of the putative class pre-judgment and post-judgment interest, as allowed by law; and

I.   Such further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 25, 2021      By:    /s/Robert L. Schug
                                   Robert L. Schug, CA State Bar No. 249640

                           Melody L. Sequoia, CA State Bar No. 309163
                           melody@sequoialawfirm.com
                           THE SEQUOIA LAW FIRM
                           530 Oak Grove Avenue, Suite 102
                           Menlo Park, California 94025
                           Telephone: (650) 561-4791
                           Facsimile: (650) 561-4817

                           Matthew C. Helland, CA State Bar No. 250451
                           helland@nka.com
                           NICHOLS KASTER, LLP
                           235 Montgomery Street, Ste. 810
                           San Francisco, CA 94104
                           Telephone: (415) 277-7235
                           Facsimile: (415) 277-7238

                           Matthew H. Morgan, MN State Bar No. 0304657*
                           morgan@nka.com
                           Robert L. Schug, CA State Bar No. 249640

18

schug@nka.com
Chloe A. Raimey, MN State Bar No. 0398257*
craimey@nka.com
NICHOLS KASTER, PLLP
80 S. 8th Street, Ste. 4700
Minneapolis, MN, 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878

Ryan F. Stephan, IL State Bar No. 6273101*
rstephan@stephanzouras.com
James B. Zouras, IL State Bar No. 6230596*
jzouras@stephanzouras.com
Teresa M. Becvar, IL State Bar No. 6312328*
tbecvar@stephanzouras.com
Catherine T. Mitchell, IL State Bar No. 6321142*
cmitchell@stephanzouras.com
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
Telephone: (312) 233-1550
Facsimile: (312) 233-1560

*Pro hac vice application forthcoming

Attorneys for Plaintiff Jessica Day
and the putative class.

CLASS ACTION COMPLAINT