1
2
3 **UNITED STATES DISTRICT COURT**
4 **NORTHERN DISTRICT OF CALIFORNIA**
5 **SAN JOSE DIVISION**
6
7 JESSICA DAY,                                    Case No.  21-cv-02103-BLF
8              Plaintiff,
9       v.                                         **ORDER GRANTING IN PART WITH
                                                  LEAVE TO AMEND IN PART AND
10 GEICO CASUALTY COMPANY, et al.,                DENYING IN PART MOTION TO
                                                  DISMISS**
11              Defendants.                        [Re:  ECF No. 25]
12
13       This lawsuit concerns a premium credit program run by Defendants GEICO Casualty
14 Company, GEICO General Insurance Company, and GEICO Indemnity Company ("GEICO").[1]
15 At the beginning of the COVID-19 pandemic in April 2020, GEICO announced the "GEICO
16 Giveback," a program that provided a 15% discount on new and renewed insurance policies.
17 Plaintiff Jessica Day alleges that GEICO made misrepresentations about the program and withheld
18 information that the true amount of GEICO's savings during the pandemic—due to fewer claims
19 from fewer miles driven and fewer vehicle accidents—was not being truly passed on to new and
20 renewing policyholders.  GEICO has moved to dismiss, arguing that Plaintiff's claims (1) invade
21 the exclusive jurisdiction of the California Department of Insurance and (2) each fails individually
22 for claim-specific reasons.  ECF No. 25 ("MTD"); *see also* ECF No. 38 ("Reply").  Plaintiff
23 opposes, stating that her claims are outside of the scope of the Department of Insurance's
24

25 [1] The Court will refer to the defendants collectively as "GEICO" except in the last subsection of
26 this order, in which the Court finds that the operative complaint currently fails to allege sufficient
27 facts against either of GEICO Indemnity Company or GEICO General Insurance Company.  *See*
28 *infra* Section III.G.

United States District Court
Northern District of California

exclusive jurisdiction and arguing that each of her claims is sufficiently pled.  ECF No. 33 ("Opp.").  The Court vacated the hearing on this motion, ECF No. 59, and requested and received supplemental briefing.  ECF Nos. 61 ("GEICO Supp."); 62 ("Pl. Supp.").  For the reasons explained below, the Court GRANTS IN PART WITH LEAVE TO AMEND IN PART and DENIES IN PART the motion to dismiss.

## I.   BACKGROUND

As alleged in the Complaint, there has been a "dramatic reduction in driving, and an attendant reduction in driving-related accidents" as a result of the COVID-19 stay-at-home orders that forced many people to stay home.  ECF No. 1 ("Compl.") ¶¶ 2–3.  Compared to the January 2020 average, California motorists drove approximately 75% fewer miles between mid-March and late April 2020, resulting in approximately 50% fewer crashes.  *Id.* ¶¶ 18–19.  This decrease in driving and accidents dramatically reduced the number of claims paid by auto insurance companies, resulting in an alleged increase in their profits.  *Id.* ¶¶ 3, 20.  At least one published report estimates that a 30% refund of premiums to insured drivers would be required to make up for the excess premiums paid over that same mid-March to late April time period.  *Id.* ¶ 22.

In response, GEICO instituted the "GEICO Giveback."  Compl. ¶ 24.  Under the program, GEICO gave new or renewing customers a 15% credit on their personal auto insurance premiums for six-month policies between April 8, 2020 and October 8, 2020, or for twelve-month policies between April 8, 2020 and April 7, 2021.  *Id.* ¶ 24.  In connection with the program, GEICO stated that "shelter in place laws have reduced driving, and we are passing these savings on to our auto, motorcycle, and RV customers."  *Id.* ¶ 26.

Plaintiff renewed her GEICO policy in February 2020 and August 2020 and was charged a premium of $871.20.  Compl. ¶ 28.  With the Giveback credit of $130.68, she paid $740.52 in premiums for the policy renewed in August 2020.  *Id.*  Her insurance policy contained the following provision:

/ / /

/ / /

/ / /

2

### 3.   CHANGES

The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.

We may revise this policy during its term to provide more coverage without an increase in premium.  If we do so, *your* policy will automatically include the broader coverage when effective in *your* state.

The premium for each auto is based on the information we have in *your* file.  *You* agree:

(a) that we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.

(b) that *you* will cooperate with us in determining if this information is correct and complete.

(c) that *you* will notify us of any changes in this information.

Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rate and forms on file, if required, for our use in *your* state.

*Id.* ¶ 30.

Plaintiff alleges that GEICO falsely claimed to its policyholders that it was "passing these savings" on to its policyholders when it was in fact only partially passing on those savings, and that it misrepresented to them the amount of its excess profits as a result of COVID-19 and the fact that premiums during COVID-19 were not based on an accurate assessment of risk during COVID-19.  Compl. ¶ 26.   Plaintiff also alleges that GEICO improperly exercised the discretion granted to it by paragraph 3 of the policy by failing to issue fuller refunds of the excessive premiums.  *Id.* ¶ 32.  She seeks to represent a class of "[a]ll California residents who purchased personal automobile, motorcycle, or RV insurance from GEICO covering any portion of the time period from March 1, 2020 to the present."  *Id.* ¶ 36.  She brings claims for unjust enrichment/quasi-contract, frustration of purpose, and violation of the covenant of good faith and fair dealing, California's False Advertising Law ("FAL"), and the unlawful, unfair, and fraudulent prongs of California's Unfair Competition Law ("UCL").  *Id.* ¶¶ 46–92.

## II.   LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

3

1    claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force*

2    *v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (internal quotation marks and citation

3    omitted). While a complaint need not contain detailed factual allegations, it "must contain

4    sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

5    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

6    570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable

7    inference that the defendant is liable for the misconduct alleged." *Id.* When evaluating a Rule

8    12(b)(6) motion, the district court must consider the allegations of the complaint, documents

9    incorporated into the complaint by reference, and matters which are subject to judicial notice.

10    *Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (citing

11    *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).

### III.    DISCUSSION

#### A.    Exclusive Jurisdiction

14    GEICO first argues that Plaintiff's claims are within the exclusive jurisdiction of the

15    California Department of Insurance. MTD at 4–8. GEICO characterizes Plaintiff's claims as

16    seeking a recalculation of the premiums approved by the Department of Insurance. *Id.* But

17    GEICO says that the California Insurance Code sets forth an exclusive statutory scheme for rate-

18    making that was created by popular referendum. *Id.* That scheme, GEICO says, invests the

19    California Department of Insurance with exclusive jurisdiction over setting insurance rates, subject

20    only to judicial review within an administrative process set out in the statute. *Id.* This lawsuit,

21    GEICO claims, would subvert that process by allowing Plaintiff to change through a civil lawsuit

22    the rate that she is charged for insurance during the pandemic. *Id.* Allowing those lawsuits would

23    result in the "explosion" of insurance class actions over allegedly excessive rates and undermine

24    the exclusive jurisdiction of the Insurance Commissioner over these matters, GEICO says. *Id.*

25    Plaintiff disputes that her claims are precluded by California's insurance rate approval

26    process. Opp. at 5–9. Plaintiff says she is challenging GEICO's premium credit through its

27    Giveback Program, not the rate that was approved by the Insurance Commissioner. *Id.* Plaintiff

28    further argues that the Insurance Code expressly allows lawsuits challenging allegedly unfair

United States District Court
Northern District of California

business practices and premium refunds or credits.  *Id.*

On October 6, 2021, after the conclusion of briefing, Plaintiff filed a notice of supplemental authority informing the Court of Judge Orrick's decision in *Boobuli's LLC v. State Farm Fire & Cas. Co.*, No. 20-cv-07074-WHO (N.D. Cal. Oct. 5, 2021), in which Judge Orrick found that claims regarding allegedly insufficient refunded premiums during COVID-19 were not within the exclusive jurisdiction of the Department of Insurance.  ECF No. 54 ("*Boobuli's*"). Finding that decision potentially instructive, the Court asked for supplemental briefing on that case.  ECF Nos. 59.  In particular, the Court asked the parties to address the Insurance Commissioner's submission in another similar case—*Rejoice! Coffee Co. LLC v. The Hartford Fin. Serv. Grp.*, No. 20-cv-6789-EMC (N.D. Cal.)—which addressed the exclusive jurisdiction issue and on which Judge Orrick relied in his decision in *Boobuli's*.  *Id.*  Unsurprisingly, Plaintiff argues that the Court should adopt the reasoning in *Boobuli's* (and, by extension, the Insurance Commissioner's reasoning in its submission in *Rejoice!*), ECF No. 62, and GEICO argues that the case and the Insurance Commissioner's opinion should not be applied here, ECF No. 61.

Under the California Insurance Code, "[i]nsurance rates subject to this chapter," including automobile insurance, "must be approved by the commissioner prior to their use."  Cal. Ins. Code. § 1861.01(c).  Prior to changing an insurance rate, an insurer must file a "rate application with the commissioner," who can take no action, approve the rate without a hearing, or order a hearing before approving or disapproving the proposed rate.  *Id.* § 1861.05(b)–(c).  An insurer "cannot charge a rate unless the rate is part of a rate plan which has been approved in advance by the [Department of Insurance]."  *MacKay v. Superior Ct.*, 188 Cal. App. 4th 1427, 1431 (2010). Insureds may challenge proposed or approved rates through administrative proceedings, which are subject to limited judicial review.  *See* Cal. Ins. Code §§ 1858, 1858.6.

Section 1860.1 of the Insurance Code states:

> No act done, action taken or agreement made pursuant to the authority conferred by this chapter shall constitute a violation of or grounds for prosecution or civil proceedings under any other law of this State heretofore or hereafter enacted which does not specifically refer to insurance.

Cal. Ins. Code § 1860.1.  Section 1861.03 of the Insurance Code, however, provides that "[t]he

United States District Court
Northern District of California

business of insurance shall be subject to the laws of California applicable to any other business, including . . . the antitrust and unfair business practices laws."  California courts have clarified that, in the face of this apparent contradiction, the sections are to be "harmoniz[ed]" by "narrowly construing the section 1860.1 immunity."  *See Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1082 (N.D. Cal. 2012) (citing *MacKay*, 188 Cal. App. 4th at 1449–50).  Under the harmonized construction, "challenges to approved rates and rating factors" are under the exclusive jurisdiction of the Insurance Commissioner (and thus not cognizable in court aside from the statutorily proscribed process), while "challenges to the *application* of approved rates" are not within that exclusive jurisdiction.  *Rejoice! Coffee Co., LLC v. Hartford Fin. Servs. Grp.*, 2021 WL 5879118, at *4 (N.D. Cal. Dec. 9, 2021).  California appellate courts have applied this distinction to find certain types of conduct immunized under § 1860.1.  *See, e.g.*, *Donabedian v. Mercury Ins. Co.*, 116 Cal. App. 4th 968 (2004) (no immunity to "as applied" challenge to an insurer's "rating factors and class plan"); *Walker v. Allstate Indem. Co.*, 77 Cal. App. 650 (2000) (immunity to suit challenging ratemaking decisions under tort claims and UCL claim); *MacKay*, 188 Cal. App. 4th 1427 (immunity to suit challenging insurer's use of approved rating factor).  Courts in this district have done the same.  *See Ellsworth*, 908 F. Supp. 2d at 1083 (no immunity to suit alleging increased costs "incurred as a result of [an] alleged kickback scheme"); *Wahl v. Am. Sec. Ins. Co.*, 2010 WL 4509814, at *3 (N.D. Cal. Nov. 1, 2010) (no immunity to UCL claim challenging insurer's "allegedly unfair conduct" in charging a premium that would have been covered by other means); *see also Boobuli's* at 8–9 (no immunity to claims challenging premium credits during COVID-19); *Rejoice!*, 2021 WL 5879118, at *3–7 (same).

As discussed below, following the persuasive reasoning in *Boobuli's* and *Rejoice!*, the Court concludes that the claims here are not within the Insurance Commissioner's exclusive jurisdiction and thus not immunized by § 1860.1.  Plaintiff's common law and California consumer protection claims challenge GEICO's application of its approved rate plan during the COVID-19 pandemic.  The Complaint alleges that GEICO's Giveback program is "inadequate to compensate its customers for the unfair windfall [GEICO] has gained as a result of COVID-19."  Compl. ¶ 25.  Plaintiff says that GEICO was falsely claiming that it was "providing substantial

and full relief" in the form of premium credits that were "inadequate," making its premiums "not based on an accurate assessment of risk during COVID-19." *Id.* ¶ 26.  These paragraphs make clear that Plaintiff is challenging GEICO's Giveback program as inadequate and GEICO's unfair application of its rate plan during the time of COVID-19.  In other words, Plaintiff is not challenging "approved rates and rating factors," but instead "the application of approved rates." *Rejoice!*, 2021 WL 5879118, at *4.[2]  This is not within the exclusive jurisdiction of the Insurance Commissioner.

This conclusion follows in the footsteps of two other courts in this district in similar lawsuits challenging the application of approved rates in light of COVID-19.  First, Judge Orrick in *Booduli's* denied a motion to dismiss a lawsuit alleging that State Farm's premium credits for coverage during the initial part of the pandemic were insufficient.  *Booduli's* at 6.  State Farm contended that the claims were immunized by § 1860.1 and thus within the exclusive jurisdiction of the Insurance Commissioner.  Judge Orrick rejected that argument, finding that "[t]he underlying challenged conduct is not State Farm's charging of an approved rate," but instead "State Farm's unfair *application* of its approved rate plan during a specific period." *Id.* at 13.  Judge Orrick carefully considered State Farm's arguments that Booduli's claims were more like those found immunized in *Walker* and *MacKay*.  He rejected those analogies and found the claims more similar to those found not immunized in *Donabedian* and *Wahl*.  Although the claims in each of *Donabedian* and *Wahl* "involved a more clearly distinctive act" from rate-setting than the failure to provide an adequate premium credit (i.e., use of a factor prohibited by the Insurance Code in determining eligibility for an approved rate, and impermissible charging of additional

---

[2] Unlike this case, *Alaei v. GEICO*, 2021 WL 1165067 (S.D. Cal. Mar. 25, 2021), did not challenge the application of an approved rate.  It instead sought restitution for money paid for a policy that did not include certain coverage.  *Id.* at *7.  The court recognized that that theory challenged the rate itself by "seeking restitution on the basis that he overpaid for his policy" because of the types and amount of coverage that was included, which is barred by the Insurance Code. *Id.*

United States District Court
Northern District of California

7

premiums for unnecessary additional coverage), he concluded that the cases did not "set[] the bar higher for what plaintiffs can bring to court and what falls within the exclusive jurisdiction of the DOI." *Id.* at 13. Based on a narrow construction of § 1860.1 immunity, Judge Orrick found the claims outside the exclusive ambit of the Insurance Commissioner and proceeded to analyze them on the merits. *Id.* at 14.

Judge Chen reached the same conclusion in *Rejoice!*. The *Rejoice*! plaintiff argued that its insurance company "was obligated to refund premiums or make adjustments warranted by the reduction in business operations caused by the COVID-19 pandemic." *Rejoice!*, 2021 WL 5879118, at *1. As in *Boobuli's*, the defendant insurance company argued that the Insurance Commissioner had exclusive jurisdiction over the claims. *Id.* at *3. After analyzing the same statutory provisions and case law analyzed herein and in *Boobuli*'s, Judge Chen concluded that "Rejoice's challenge is to the *application* of approved rates/the rate plan, not the plan itself," and thus that it was cognizable in federal court. *Id.* at *6.[3]

In its supplemental brief, GEICO seeks to distinguish *Boobuli's* and *Rejoice!*. The Court finds neither effort persuasive. First, this Court and others have already rejected GEICO's characterization of these cases as "retrospectively challeng[ing] [rates] as having become 'excessive.'" ECF No. 61 at 1. Instead, these cases challenge the *application* of an approved rate plan during the COVID-19 in the form of allegedly insufficient premium credits. Second, GEICO argues that the holdings in *Boobuli's* and *Rejoice!* are undermined by the California Court of

_____

[3] The Court also notes the Insurance Commissioner took a position on this jurisdictional issue in *Rejoice!*. In a brief in that case, the Insurance Commissioner states that the immunity conferred by § 1860.1 "extends . . . only to actions or agreements made by insurers that are affirmatively authorized" under that part of the Insurance Code. *Rejoice!*, ECF No. 61, at 3. Because § 1860.1 does not extend to every action related to ratemaking, "insurers could take action that, though indirectly related to ratemaking, is not authorized" under the Insurance Code. *Id.* at 4. The refusal to adjust premiums in response to COVID-19 is one such action not immunized, the Insurance Commissioner says, and thus lawsuits may be brought in federal court. *Id.*

United States District Court
Northern District of California

Appeal's decision in *State Farm Gen. Ins. Co. v. Lara*, 71 Cal. App. 5th 148, 188–194 (2021). GEICO argues that the *Lara* decision "held that the California Insurance Code bars the imposition of retroactive rates and refunds[] and recognized the exclusivity of California rate approval proceedings." ECF Nos. 57 at 1; 61 at 1. The Court finds *Lara* inapposite. That case involved a challenge to the *Insurance Commissioner's* order imposing a retroactive rate and refund, and held that the Insurance Code's "prior approval requirement is prospective in operation and inconsistent with retroactive rates and refunds." *Lara*, 71 Cal. App. 5th at 188. Of course, this case concerns whether a lawsuit may be brought outside of the Insurance Commissioner's exclusive jurisdiction to challenge the application of an already-approved rate during COVID-19. Whether the Insurance Commissioner can order a retroactive rate and refund is not relevant to that question.

GEICO's motion to dismiss Plaintiff's claims on this ground is DENIED. Because the Court has found that Plaintiff's claims are outside the scope of the exclusive jurisdiction of the Department of Insurance, the Court proceeds to evaluate each of the claim-specific arguments that GEICO makes for dismissal.

### B. Breach of Contract – Covenant of Good Faith and Fair Dealing

Plaintiff's first claim asserts a breach of the covenant of good faith and fair dealing. Compl. ¶¶ 46–52. Plaintiff claims that GEICO's insurance contracts give GEICO "discretion to adjust premiums if the information upon which those premiums are based changes or becomes incorrect." *Id.* ¶ 49. GEICO "exercised its contractual discretion in bad faith by failing to issue refunds of premiums . . . in the face of a global pandemic that drastically reduced driving in the state," Plaintiff says. *Id.* ¶ 50. This allegedly frustrated Plaintiff's right to the expected benefit of their bargain, which "include[d] the reasonable expectation that insurance premiums will be based on an accurate assessment of risk." *Id.* ¶ 51.

GEICO argues that this claim must be dismissed. MTD at 9–12. First, GEICO says that the "Changes" section of the policy only requires Plaintiff to provide accurate information to GEICO, who may change the premium if she reports new information. *Id.* at 9–10 (citing *Siegal v. GEICO Cas. Co.*, 2021 WL 825667, at *2 (N.D. Ill. Mar. 4, 2021)). Plaintiff does not allege that she updated her information or that it was incorrect, so no such discretionary duty to change

9

1    Plaintiff's premium arose (and it did not have any mandatory duty).  MTD at 10–11.  Finally,

2    GEICO argues that while the implied covenant can support a "bad-faith claim for the denial or

3    mishandling of coverage benefits," it cannot support a claim for withholding of benefits.  *Id.* at

4    11–12.  Plaintiff's use of the implied covenant in this context would impermissibly expand the

5    policy to add new terms, GEICO says.  *Id.*

6         Plaintiff counters that the "Changes" section gives GEICO discretion to modify a policy

7    based on any changed information affecting premiums, not just information provided by Plaintiff.

8    Opp. at 17–19.  Plaintiff also argues that she is not attempting to expand the terms of the contract,

9    but merely require GEICO to exercise its contractual discretion in good faith, consistent with the

10   meaning of the implied covenant.  *Id.* at 19–20.  Plaintiff also asserts that the implied covenant is

11   not limited to claims for denial or mishandling of benefits.  *Id.* at 20–21.

12        The implied covenant of good faith and fair dealing is "implied by law in every contract"

13   and "exists merely to prevent one contracting party from unfairly frustrating the other party's right

14   to receive the benefits of the agreement actually made."  *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th

15   317, 349 (2000) (emphasis removed).  As such, the covenant "cannot impose substantive duties or

16   limits on the contracting parties beyond those incorporated in the specific terms of their

17   agreement."  *Id.* at 349–50.  But "[w]here a contract confers on one party a discretionary power

18   affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in

19   accordance with fair dealing."  *Shirley v. L.L. Bean, Inc.*, 2019 WL 1205089, at *3 (N.D. Cal.

20   Mar. 14, 2019).

21        First, the Court rejects two of GEICO's threshold arguments.  GEICO's argument that a

22   claim for breach of the covenant of good faith and fair dealing only lies where an insurance

23   company has withheld payment of a claim by the insured, MTD at 11–12, has been repeatedly

24   rejected in this district as inconsistent with California law.  While improper denial of benefits is

25   "one type of bad faith claim," it is "not the only type, and it is not the bad faith claim asserted by

26   Plaintiff[]."  *Parducci v. Overland Sols., Inc.*, 2019 WL 6311384, at *9 (N.D. Cal. Nov. 25, 2019)

27   (quoting *King v. Nat'l Gen. Ins. Co.*, 129 F. Supp. 3d 925, 941 (N.D. Cal. 2015)).  Plaintiff's

28   implied covenant claim here is based on GEICO's alleged failure to exercise in good faith

1    discretion granted to it under the insurance contract between the parties.  It does not fail merely

2    because it is not related to withholding of benefits.  *Hilario v. Allstate Ins. Co.*, 2020 WL

3    7643233, at *6 (N.D. Cal. Dec. 23, 2020).  GEICO's argument that the insurance policy does not

4    mandate adjustments to premiums also does not foreclose an implied covenant claim, which is

5    based on exercising discretionary powers in good faith.  *See Leghorn v. Wells Fargo Bank, N.A.*,

6    950 F. Supp. 2d 1093, 1120 (N.D. Cal. 2013) (breach of implied covenant claim pleaded by

7    alleging defendant improperly exercised discretionary power).

8      Although an implied covenant claim is not limited in the ways GEICO suggests, the Court

9    agrees with GEICO that Plaintiff has not adequately pled such a claim in her Complaint.  In

10   defense of her claim, Plaintiff cites solely to the "Changes" section of the insurance contract,

11   which she claims "plainly gives GEICO the discretion to issue appropriate premium relief in

12   response to the unforeseen global COVID-19 pandemic and the resulting decrease in claims made

13   among the risk pool."  Opp. at 18.  But Plaintiff reads parts of the "Changes" provision out of

14   context.  Under California law, "[t]he whole of a contract is to be taken together, so as to give

15   effect to every part, if reasonably practicable, each clause helping to interpret the other."  Cal. Civ.

16   Code § 1641.  Reading the entire provision in context makes clear that GEICO's discretionary

17   power to adjust Plaintiff's policy premiums is based on changes in "information" in Plaintiff's

18   insurance file.  But that "information" is information that Plaintiff herself provides—perhaps a

19   new address or correction of existing information—not general changed circumstances like

20   COVID-19.  Other provisions make this clear:  the policy states that "*you* will notify us of any

21   changes in this information," and  "*you* will cooperate with us in determining if this information is

22   correct," with *you* being Plaintiff.  Compl. ¶ 30.  GEICO's discretionary power to "adjust

23   [Plaintiff's] policy premiums" is not triggered unless "any of this information on which the

24   premiums are based is incorrect, incomplete or changed."  *Id.*  The general circumstances of the

25   COVID-19 pandemic are not "information" that would be provided by Plaintiff to GEICO, as the

26   "Changes" section contemplates, and so GEICO's discretionary power to adjust premiums under

27   that provision is not triggered.  *See Siegal*, 523 F. Supp. 3d at 1038–40 (dismissing breach of

28   implied covenant claim under Illinois law based on same "Changes" provision in GEICO

United States District Court
Northern District of California

insurance policy); *cf. Ridings v. Am. Family Ins. Co.*, 2021 WL 722856, at *7 (N.D. Ill. Feb. 24, 2021) (dismissing breach of implied covenant claim because implied covenant "doesn't permit a party to add substantive provisions to a contract when circumstances change"); *Jones v. GEICO Cas. Co.*, 2021 WL 3602855, at *4–5 (N.D. Ill. Aug. 13, 2021) (dismissing breach of implied covenant claim because implied covenant did not allow party to vary terms of the contract, even in changed circumstances).

While the Court concludes that the "Changes" provision in GEICO's contract is not susceptible to Plaintiff's reading when read in context, that does not mean that GEICO does not possess the inherent discretionary power to make "voluntary downward premium adjustments based on an insured's changed circumstances." *Cf. Boobuli's* at 20–21 (noting concession from State Farm that it had that discretionary power and allowing breach of implied covenant claim to survive partially on that basis). Plaintiff has not pled a claim for breach of the implied covenant and fair dealing based on that inherent power. But given the possibility that Plaintiff may be able do so, the Court will DISMISS the claim WITH LEAVE TO AMEND.

### C.   Unjust Enrichment

Plaintiff's second claim is for unjust enrichment/quasi-contract, in which Plaintiff alleges that GEICO has been unjustly enriched by its failure to provide adequate premium credits to its customers. Compl. ¶¶ 53–56. GEICO argues that the unjust enrichment claim should be dismissed because the claim cannot be brought if there is an enforceable contract—here, the insurance policy—which she herself seeks to enforce. MTD at 12–13. Plaintiff responds that she has pleaded the claim in the alternative to her contract claim. Opp. at 21–22.

The Court agrees with GEICO. "[A]n action based on implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract governing the same subject matter." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014). While Plaintiff is correct that Federal Rule of Civil Procedure 8 allows pleading in the alternative, "the liberal pleading policy has its limits." *Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*, 252 F. App'x 123, 126 (9th Cir. 2007). "A pleader may assert contradictory statements of fact only when legitimately in doubt about the facts in question." *Id.* (quoting *Am. Int'l*

United States District Court
Northern District of California

1    *Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996)).  Here, there is no dispute about the

2    existence or validity of the insurance contract between Plaintiff and GEICO.  Plaintiff thus does

3    not plead (even in the alternative) that the contract is unenforceable or void.  *See Saroya v. Univ.*

4    *of the Pacific*, 503 F. Supp. 3d 986, 998–99 (N.D. Cal. 2020) (dismissing unjust enrichment claim

5    where plaintiff "did not deny the existence or enforceability" of the contract between the parties);

6    *see also Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1056–57 (N.D. Cal. 2021) (same).

7    Where there is no such dispute over validity or enforceability, this Court has previously held that

8    dismissal with prejudice is appropriate.  *See Huynh v. Quora, Inc.*, 2019 WL 11502875, at *12

9    (N.D. Cal. Dec. 19, 2019) (dismissing unjust enrichment claim with prejudice where no dispute

10    about existence or validity of the contract between the parties).  Accordingly, Plaintiff's unjust

11    enrichment claim is DISMISSED WITHOUT LEAVE TO AMEND.[4]

12        **D.    Frustration of Purpose**

13        Plaintiff's third claim is for "frustration of purpose."  Compl. ¶¶ 57–61.  The claim states

14    that the "principal purpose" of Plaintiff's insurance policy was for Plaintiff to "receiv[e] insurance

15    coverage at rates based on an accurate assessment of risk," and that GEICO's failure to adequately

16    refund premiums in response to COVID-19 "substantially destroyed" that purpose.  *Id.*  Plaintiff

17    seeks a declaration that payment of "full premiums is no longer required, and that GEICO must

18    disgorge its unfair windfall from premiums paid to date."  *Id.* ¶ 61.

19        GEICO says the claim suffers from three defects.  The Court has already rejected GEICO's

20    first argument that the claim conflicts with the exclusive administrative process within the

21    Department of Insurance for challenging rates.  MTD at 13.  GEICO then argues that California

22    law recognizes "frustration of purpose" only as a defense to a claim for enforcement of a contract,

23    not as a standalone claim.  *Id.* at 13–14.  Finally, GEICO argues that Plaintiff does not allege that

24    her insurance policy was valueless, which is an element of the frustration of purpose defense.  *Id.*

25    at 14.  Plaintiff responds that the Court may issue declarations of rights under the federal

26    _____

27    [4] The Court notes that unjust enrichment claims generally are useless distractions that rarely

28    proceed to trial on the merits.

United States District Court
Northern District of California

1    Declaratory Judgment Act (which is the only relief the claim seeks) and that it is sufficient to

2    plead that the purpose of her insurance policy—"insurance at rates based on an accurate

3    assessment of risk"—was "substantially destroyed."  Opp. at 21.

4        Frustration of purpose "arises when a change in circumstances makes one party's

5    performance virtually worthless to the other."  *LECG, LLC v. Unni*, 2014 WL 2186734, at *7

6    (N.D. Cal. May 23, 2014) (quoting *Century Sur. Co. v. 350 W.A., LLC*, 2007 WL 2688488, at *4

7    (S.D. Cal. Sep. 7, 2007), and Restatement (Second) of Contracts § 265 (Am. Law Inst. 1981)); *see*

8    *also* 1 Witkin, Summary 11th Contracts § 868 (2021) (noting that frustration of purpose is an

9    excuse for nonperformance that is "not always distinguished from true impossibility").  The

10   Restatement articulates it as follows:

> Where, after a contract is made, a party's principal purpose is
> substantially frustrated without his fault by the occurrence of an event
> the non-occurrence of which was a basic assumption on which the
> contract was made, his remaining duties to render performance are
> discharged, unless the language or the circumstances indicate the
> contrary.

15   Restatement (Second) of Contracts § 265 (Am. Law Inst. 1981).  A comment notes that the

16   purpose frustrated must be "so completely the basis of the contract that, as both parties understand,

17   without it the transaction would make little sense."  *Id.* cmt. a.

18       The Court finds that, even assuming frustration of purpose can exist as a standalone claim

19   under Plaintiff's theory seeking merely a declaration, the claim fails on its own because the

20   Complaint fails to plausibly plead that the insurance policy was made "virtually worthless."

21   *LECG*, 2014 WL 2186734, at *7.  Plaintiff characterizes the purpose of the policy as "receiving

22   insurance coverage at rates based on an accurate assessment of risk."  Compl. ¶ 60.  While

23   Plaintiff was surely looking for the best deal for insurance, the principal purpose in obtaining

24   insurance is to obtain financial coverage for incidents covered by the policy.  *See Jones*, 2021 WL

25   3602855, at *6 (rejecting frustration of purpose claim identical to the one asserted here because

26   "the *principal* purpose in buying insurance is to obtain insurance"); *Siegal*, 523 F. Supp. 3d at

27   1040–41 (same).  Plaintiff has not alleged that her actual coverage hampered by GEICO's

28

practices.  Accordingly, her claim fails.[5]

Because the Court has rejected the fundamental theory underlying this claim, amendment would be futile and the claim is DISMISSED WITHOUT LEAVE TO AMEND.

### E.    False Advertising Law

In count four, Plaintiff asserts a violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500.  Compl. ¶¶ 62–71.  Plaintiff alleges that GEICO violated the FAL when, in advertising in conjunction with its GEICO Giveback Program, it stated that "shelter in place laws have reduced driving, and we are passing these savings on to our auto, motorcycle, and RV customers."  *Id.* ¶ 65.  GEICO, in fact, did not pass the company's savings on because it did not provide a premium credit to insureds commensurate with "the amount of its excess profits caused by COVID-19."  *Id.*  It instead provided only a 15% discount, which "fell well short of what has been very conservatively estimated as an adequate refund."  *Id.* ¶ 4.

GEICO argues that the FAL claim is subject to dismissal for two reasons.  First, GEICO says that Plaintiff has not alleged reliance on the quoted statement.  MTD at 15–16.  Second, GEICO argues that any reasonable consumer who did not understanding the phrase "pass on these savings" would have seen the specific offer of a 15% credit that made clear the exact meaning of that phrase.  MTD at 16–17.  Plaintiff responds that her allegations regarding reliance are sufficient and that she need not allege that she relied specifically on the "passing these savings on" statement.  *See* Opp. at 14–15 (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009)).  Plaintiff also says that GEICO's offer of a 15% discount does not preclude her claims because her "claim is not that she expected 15% and got something less, but that the 15% credit does not actually pass GEICO's savings on to its customers as GEICO's statement promises."  Opp. at 17.

---

[5] The Court also notes that Plaintiff's complaint—that risk of accidents was lessened due to unforeseen events, making the purchase of insurance less valuable or unnecessary in hindsight—is the very risk entailed in the purchase of insurance in the first place.  Every insured who is fortunate enough to not have grounds for an insurance claim has in some sense "overpaid" for their policy.

The Court finds it unnecessary to reach GEICO's second argument on the merits of Plaintiff's theory because it agrees that Plaintiff has not adequately alleged reliance on the "passing these savings on" statement.  Plaintiff is incorrect that she need not show reliance on the specific alleged misrepresentations at the pleading stage, and her reliance on *Tobacco II* is misplaced.  In *Tobacco II*, the California Supreme Court concluded that absent class members did not need to satisfy the actual reliance requirement of the UCL "where class requirements have otherwise been found to exist."  46 Cal. 4th at 324.  But courts since *Tobacco II* have universally recognized that this holding "was in the context of a 'decades-long' tobacco advertising campaign where there was little doubt that almost every class member had been exposed to [the tobacco companies'] misleading statements."  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012).  Plaintiff has not alleged a "long-term advertising campaign" here—indeed, she alleges that the Giveback program started in April 2020 and no longer exists.  Compl. ¶ 24.  Those allegations belie any argument that GEICO's advertising for the Giveback program could satisfy the *Tobacco II* requirements for presumption of reliance.

Because she is not entitled to the presumption of reliance, she must plead that she "actually relied on the challenged misrepresentation[]."  *Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1208 (N.D. Cal. 2017); *see also Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326–27 (2011) (holding that plaintiff must plead "reliance on the allegedly deceptive or misleading statements" to plead an FAL claim).  But Plaintiff only alleges that she "received advertisements, emails, and other information from GEICO representatives concerning the 'Giveback'."  Compl. ¶ 29.  These allegations are too general; Plaintiff has not alleged that she viewed the "passing these savings on" statement prior to renewing her policy.

Without allegations of reliance on the specific statement at issue, she has not stated an FAL claim.  The claim is accordingly DISMISSED WITH LEAVE TO AMEND.

### F.   Unfair Competition Law

In count five, Plaintiff asserts a violation of California's Unfair Competition Law.  Compl. ¶¶ 72–92.  Plaintiff identifies each of the unlawful, unfair, and fraudulent prongs as grounds for

her claim.  *See* Compl. ¶¶ 76, 77, 80.  The Court evaluates each in turn.[6]  *See Lozano v. AT & T*
*Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (each prong of the UCL is separate theory
of liability).

### i.   Unlawful Business Practices

Plaintiff asserts a violation of the unlawful prong of UCL using GEICO's alleged violation
of the FAL as the predicate unlawful act.  Compl. ¶ 76.  Because the Court has already dismissed
the FAL claim with leave to amend, the Court also DISMISSES WITH LEAVE TO AMEND
Plaintiff's claim under the UCL unlawful prong.  *See Meyer v. Aabaco Small Business, LLC*, 2018
WL 306688, at *4 (N.D. Cal. Jan. 5, 2018) (dismissing UCL unlawful claim where Court had
already dismissed claim for predicate violation of the FAL); *accord* MTD at 18.

### ii.   Unfair Business Practices

Plaintiff also asserts a violation of the unfair prong of the UCL.  Compl. ¶¶ 77–79.
Plaintiff alleges that GEICO has violated the unfair prong of the UCL by failing to refund excess
premiums with knowledge that they were not based on accurate risk assessments; issuing the 15%
credit only to new or renewing customers; falsely claiming that it was providing "substantial and
full" relief through the Giveback program; and failing to disclose that it was earning excess
profits.  *Id.* ¶¶ 77(a)–(d).

GEICO makes several arguments for dismissal.  MTD at 17–19.  It first repeats the
argument that the claim is preempted by the California Insurance Code, which the Court has
already rejected.  *See id.* at 17.  GEICO then argues that the claim fails for lack of deception and
lack of reliance.  MTD at 18–19.  Plaintiff responds that her allegations of unfair conduct are

---

[6] GEICO's argument on the UCL claim is not clearly tailored to each of the prongs of the UCL,
other than one argument made specifically about the "unlawful" claim.  *See* MTD at 17–19.
Plaintiff's defense of her California consumer protection claims is not clearly divided between her
UCL and FAL claims.  *See* Opp. at 9–17.  If GEICO chooses to move to dismiss Plaintiff's
amended UCL and FAL claims, the parties should direct their argument on each of these claims
more clearly.

1    sufficient under either of the two tests California courts have used to evaluate UCL unfair claims.

2    Opp. at 9–13.

3         The unfair prong of the UCL "creates a cause of action for a business practice that is unfair

4    even if not proscribed by some other law." *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1023

5    (N.D. Cal. 2019).  While the definition of "unfair" is "in flux," California courts have coalesced

6    around two tests.  *See Lozano*, 504 F.3d at 736.  Some courts apply a balancing test in which the

7    court "weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged

8    victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).  Others apply

9    the "tethering test," which asks whether the unfair act is "tethered to some legislatively declared

10   policy" or whether there is "proof of some actual or threatened impact on competition." *Lozano*,

11   504 F.3d at 735.

12        At the pleading stage, Plaintiff's allegations suffice under either test.  Under the balancing

13   test, Plaintiff has sufficiently alleged that the harm of GEICO's conduct outweighs its utility.

14   Plaintiff has alleged that GEICO unjustly retained a financial windfall in the context of a global

15   pandemic, offering only minimal relief to new and renewing policyholders and nothing to

16   overcharged policyholders who did not renew their policies.  *See* Compl. ¶ 77.  Plaintiff has

17   alleged that there was no societal benefit to that conduct.  *Id.* ¶ 78.  Given the "lenient standard on

18   a motion to dismiss," *Ellsworth*, 908 F. Supp. 2d at 1090, these allegations suffice to state a claim

19   under the balancing test.

20        Plaintiff's allegations are similarly sufficient at the pleading stage under the tethering test.

21   The tethering test is satisfied if Plaintiff identifies a practice that "offends an established public

22   policy." *Elgindy v. AGA Serv. Co.*, 2021 WL 1176535, at *10 (N.D. Cal. Mar. 29, 2021).

23   Plaintiff has alleged that GEICO has failed to issue adequate premium credits to capture the

24   misclassification of risk resulting from COVID-19, Compl. ¶ 77, which allegedly violates

25   California public policy that cost of insurance be fair, transparent and affordable.  *See Lara*, 35

26   Cal. App. 5th at 88 ("The Insurance Code has prohibited the charging of unfair premiums since

27   1947."); *accord Elgindy*, 2021 WL 1176535, at *11 (citing other provisions of law espousing the

28   same principles).  Plaintiff says that the Insurance Commissioner's April 2020 bulletin, which

United States District Court
Northern District of California

1    encouraged refunds of premiums "[t]o protect consumers and to provide consistent direction to the

2    insurance industry regarding misclassifications of risk resulting from the COVID-19 pandemic," is

3    further evidence of this "public policy" as applied during COVID-19 specifically.  Opp. at 12;

4    Heidtke Decl. Ex. A, ECF No. 25-2 at 4–5.  These allegations suffice to state a claim under the

5    tethering test at the pleading stage.  *See Boobuli's* at 19 (UCL unfair claim sufficiently pled based

6    on alleged violation of public policy by "collecting and retaining premiums for a risk that no

7    longer exists, or has been substantially reduced" by COVID-19).

8         GEICO's arguments to the contrary are unpersuasive.  GEICO argues that there has been a

9    lack of deception and that Plaintiff has not pleaded reliance.  MTD at 18–19.  But here, unlike in

10   the false advertising claim, Plaintiff's allegations of GEICO's unfair conduct stretch beyond a

11   particular misstatement.  Plaintiff alleges that GEICO has engaged in unfair conduct by failing to

12   issue an adequate premium credit in light of the misclassification of risk due to COVID-19, which

13   resulted in the loss of money to Plaintiff and others in the putative class.  This is sufficient to

14   sustain her UCL unfair claim at this juncture.  *See Boobuli's* at 19 (finding UCL unfair claim

15   plausibly pled based on allegations that State Farm collected and retained premiums "for a risk

16   that no longer exists, or has been substantially reduced" in violation of public policy); *Rejoice!*,

17   2021 WL 5879118, at *8–9 (finding UCL unfair claim plausibly plead based on allegations that

18   Sentinel gained profits beyond a fair rate of return from inflated business insurance premiums

19   during the pandemic).

20        GEICO's motion to dismiss Plaintiff's UCL unfair claim is DENIED.

21            **iii.    Fraudulent Business Practices**

22        Plaintiff also brings a claim under the "fraudulent" prong of the UCL.  Compl. ¶¶ 80–83.

23   Plaintiff again points to the "passing these savings on" statement as ground for the claim, stating

24   that GEICO failed to disclose that the 15% credit was not in fact passing the company's savings

25   on to its customers.  *Id.* ¶ 82.  GEICO does not distinguish its arguments for dismissing this UCL

26   prong from its arguments regarding the other UCL prongs.  *See* MTD at 18–19.

27        Here, Plaintiff's failure to plead reliance on the "passing these savings on" statement is

28   fatal to her claim because she points only to this statement as grounds for her claim.  *See supra*

United States District Court
Northern District of California

1    Section III.E.  For the same reasons as in the false advertising claim, the UCL fraudulent claim is

2    DISMISSED WITH LEAVE TO AMEND.[7]

3        **G.    GEICO Indemnity Co. and GEICO General Co.**

4        Plaintiff has named three defendants:  GEICO Casualty Company, GEICO Indemnity

5    Company, and GEICO General Insurance Company.  GEICO argues that GEICO Indemnity

6    Company and GEICO General Insurance Company should be dismissed because Plaintiff only has

7    her insurance policy with GEICO Casualty Company and has failed to provide any "supporting

8    evidentiary detail" as to the other two GEICO entities.  MTD at 19.  Plaintiff argues that it would

9    be premature to dismiss any defendants because discovery has not yet revealed which entity or

10   entities are responsible for the conduct at issue here.  Opp. at 22–23.

11       GEICO is correct that the allegations regarding the involvement of any of the individual

12   entities is sparse.  The only allegation addressing the three defendants separately states that the

13   entities are "affiliated companies, jointly participated in, and are jointly responsible for the

14   unlawful conduct herein."  *See* Compl. ¶ 9 (alleging that "[a]ll three Defendants market

15   collectively under the trademark 'GEICO'").  This allegation alone would likely be insufficient to

16   keep all three Defendants in the case.  *See Boobuli's* at 22–23 (dismissing State Farm Mutual, the

17   parent company of the insuring entity State Farm General, because plaintiff did not allege that

18   "State Farm Mutual obtained something to which it was not entitled" or any facts supporting an

19   agency relationship).

20       Nevertheless, the Court cannot presently evaluate which, if any, of the Defendants should

21   _____

22   [7] Plaintiff also appears to allege a claim under an alternate theory:  the "unfair, deceptive, untrue

23   or misleading advertising" prong of the UCL.  Compl. ¶¶ 84–88.  A leading practice guide notes

24   that this prong "appear[s] to duplicate [the FAL's] similar prohibtions on misleading advertising"

25   and that courts have applied the same test as for UCL fraudulent claims.  William L. Stern, Bus. &

26   Prof. Code 17200 §§ 3:212, 3:216 (Rutter 2021).  Thus, to the extent Plaintiff purports to state a

27   claim under that prong, the same analysis as for those two claims applies here, and this claim is

28   also dismissed with leave to amend for failure to allege reliance.

United States District Court
Northern District of California

be dismissed.  The Complaint does not allege which of the Defendants is the one who entered into Plaintiff's contract of insurance.  *See* Compl. ¶¶ 9–10 (stating only that Plaintiff "has held personal auto insurance policies purchased from GEICO").  Although Plaintiff does not clearly contest GEICO's assertion that it is GEICO Casualty Company, *see* Opp. at 22, the Court does not have any allegations or evidence properly in the record (such as the actual insurance policy) elucidating which entity is entered into the policy with Plaintiff.[8]  Without that information, there is a risk that the Court would dismiss the incorrect Defendant or Defendants.

Because the Court is allowing Plaintiff to amend certain claims in her Complaint, the Court will allow Plaintiff to plead additional facts supporting her claims against each of the Defendants. In her amended complaint, Plaintiff SHALL identify the Defendant with whom she entered into her insurance policy.  For the other Defendants, Plaintiff SHALL plead additional facts supporting her theory that they "jointly participated in [or] are jointly responsible for the unlawful conduct" alleged in the Complaint.  If GEICO chooses to move to dismiss Plaintiff's amended complaint, it may raise this issue again.  For now, all Defendants will remain in this case.

\*      \*      \*

Having considered all of the issues raised in this motion, the Court circles back to recognize that GEICO's overarching objection to Plaintiff's theories of recovery is that it is improper under California law for a jury to "retroactively recalculate [Plaintiff's] auto insurance premium."  MTD at 1.  Although the Court finds that these claims are not precluded by Insurance Code § 1860.1, the Court is concerned that at the end of the day, Plaintiff may ask a jury or this Court to determine what constitutes excessive profits in the auto insurance industry in California and to reset the premium rates during COVID-19, which are traditionally within the expertise of

---

[8] GEICO has submitted the purported declarations page of Plaintiff's policy.  Zappala Decl. Ex. 1, ECF No. 25-3 at 3.  But that page bears the name of GEICO General Insurance Company, which GEICO claims did *not* issue Plaintiff's policy.  GEICO, however, has not asked for judicial notice of the declarations page or argued that it has been incorporated by reference into the Complaint. Accordingly, the Court declines at present to rule on this issue on the basis of that document.

United States District Court
Northern District of California

the Department of Insurance.  As this case develops, the Court will be mindful of the proper division of responsibility between this Court and the Department of Insurance and anticipates guidance from the parties about the manner in which issues will be defined for resolution by a jury or the Court.

## IV.     ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that GEICO's motion to dismiss is:

- DENIED, as to the request to dismiss all of Plaintiff's claims because they are within the exclusive jurisdiction of the Insurance Commissioner;

- GRANTED WITH LEAVE TO AMEND, as to the claim for breach of the implied covenant of good faith and fair dealing;

- GRANTED WITHOUT LEAVE TO AMEND, as to the claim for unjust enrichment;

- GRANTED WITHOUT LEAVE TO AMEND, as to the claim for frustration of purpose;

- GRANTED WITH LEAVE TO AMEND, as to the claim under California's False Advertising Law;

- GRANTED WITH LEAVE TO AMEND, as to the claim under the unlawful prong of California's Unfair Competition Law;

- DENIED, as to the claim under the unfair prong of California's Unfair Competition Law; and

- GRANTED WITH LEAVE TO AMEND, as to the claim under the fraudulent prong of California's Unfair Competition Law.

Plaintiff SHALL file an amended complaint within 21 days of this Order.  Failure to meet the deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in dismissal of the deficient claims with prejudice.  Amendment shall not exceed the scope of the deficiencies identified in this Order.

Dated:  January 20, 2022

_____
BETH LABSON FREEMAN
United States District Judge