Melody L. Sequoia, CA State Bar No. 309163
melody@sequoialawfirm.com
THE SEQUOIA LAW FIRM
530 Oak Grove Avenue, Suite 102
Menlo Park, California 94025
Telephone: (650) 561-4791
Facsimile: (650) 561-4817

Matthew C. Helland, CA State Bar No. 250451
helland@nka.com
NICHOLS KASTER, LLP
235 Montgomery Street, Ste. 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Additional Attorneys Listed on Signature Page

Attorneys for Plaintiff Jessica Day
and the putative class.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| Jessica Day, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> GEICO CASUALTY COMPANY, GEICO INDEMNITY COMPANY, and GEICO GENERAL INSURANCE COMPANY, <br><br> Defendants. | **Case No.: 5:21-cv-02103-BLF** <br><br> **AMENDED CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** <br><br> **(1) Breach of Contract** <br><br> **(2) Unjust Enrichment** <br><br> **(3) Violation of California Business and Professions Code § 17200** *et seq.* |

### AMENDED CLASS ACTION COMPLAINT

Plaintiff Jessica Day ("Plaintiff"), by and through her attorneys and on behalf of herself and all others similarly situated, hereby submits this Amended Class Action Complaint against Defendants GEICO Casualty Company, GEICO Indemnity Company, and GEICO General Insurance Company ("GEICO" or "Defendants"), and alleges as follows:

### PRELIMINARY STATEMENT

1.      This case is filed to end GEICO's practice of unfairly profiting from the global COVID-19 pandemic. As of the date of this filing, the United States has confirmed over 28 million coronavirus cases. The State of California alone has over 3.5 million confirmed cases.

2.      Beginning in March 2020, states across the country, including California, began to enforce strict social distancing measures to slow the spread of COVID-19. This included closing schools and businesses and instituting strict "stay-at-home" orders that prevented most individuals from leaving their homes for extended periods of time.

3.      While many companies, industries, and individuals have suffered financially as a result of the COVID-19 pandemic, auto insurers like GEICO have scored a windfall. Not surprisingly, as a result of state-wide social distancing and stay-at-home measures, there has been a dramatic reduction in driving, and an attendant reduction in driving-related accidents. This decrease in driving and accidents has significantly reduced the number of claims that auto insurers like GEICO have paid, resulting in a drastic and unfair increase in GEICO's profits at the expense of its customers. According to its parent company, Berkshire Hathaway, GEICO reported pretax earnings of $3.428 billion in 2020. That is more than double GEICO's earnings over the same period in 2019.

4.      One published report calculates, very conservatively, that at least a 30% average refund of paid premiums would be required to make up for the excess amounts paid by consumers for just the period between mid-March and the end of April of 2020. Despite full knowledge of these facts, GEICO has failed to issue refunds. The company's short-lived "GEICO Giveback" program was woefully inadequate to compensate its customers for overpayments resulting from COVID-19. The program applied a 15% discount on new and

renewal auto insurance policies from April to October 2020. But it did not apply any discount to the premiums that customers already paid and continued to pay on policies already existing at the start of the COVID-19 pandemic. And even with respect to new and renewal policies, the 15% credit fell well short of what has been very conservatively estimated as an adequate refund. Despite the inadequacy of its refund program, GEICO falsely advertised to consumers that it was "passing [its COVID-related] savings on" to its customers.

5.     To remedy Defendants' unlawful conduct, Plaintiff brings this amended class action alleging violations of California state law. Plaintiff seeks disgorgement of the ill-gotten gains obtained by GEICO to the detriment of its customers, all available damages, punitive damages, declaratory and injunctive relief, and all other available relief.

## JURISDICTION

6.     This Court has jurisdiction under 28 U.S.C. § 1332(d) because this is a class action in which the amount in controversy is over $5,000,000 exclusive of interest and costs, and at least one member of the class is a citizen of a State different from Defendants.

## VENUE

7.     Venue is proper in the Northern District of California under 28 U.S.C. § 1391 because Defendants reside in this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## INTRADISTRICT ASSIGNMENT

8.     Pursuant to Civil L.R. 3-2(c) and (e), and 3-5(b), this action is properly assigned to the San Jose Division of the Northern District of California because a substantial portion of the events or omissions giving rise to the dispute occurred in Monterey County.

## PARTIES

**Defendants**

9.     Defendants GEICO Casualty Company, GEICO Indemnity Company, and GEICO General Insurance Company are Maryland corporations owned by GEICO Corporation. Defendants are all headquartered in Chevy Chase, Maryland, and operate under CEO Todd Combs.

10.     Defendants sell personal automobile insurance in states around the country, including California. Defendant GEICO General Insurance Company writes preferred-risk private passenger automobile insurance for drivers who are not government employees or military personnel; Defendant GEICO Indemnity Company writes primarily private passenger automobile and motorcycle insurance; and Defendant GEICO Casualty Company also writes primarily private passenger automobile insurance.

11.     Defendants and other affiliated GEICO entities "market insurance as GEICO," and "[s]ubstantially all of the insurance operations of these companies are performed by" the same GEICO entity, named Government Employees Insurance Company.[1]

12.     Defendants issued personal auto, motorcycle, and/or RV insurance policies to Plaintiff and the members of the putative class during the relevant time period. Defendants are affiliated companies, jointly participated in, and are jointly responsible for the unlawful conduct described herein.

13.     In April 2020, GEICO announced the "GEICO Giveback" program at issue in this lawsuit. The Giveback was uniformly developed by GEICO and was applied in identical fashion by each of the Defendants. Indeed, Defendants submitted a joint memorandum to the California Department of Insurance explaining the uniform terms and application of the GEICO Giveback.[2] Defendants have each applied the GEICO Giveback program and the unfair practices at issue to California policyholders during the relevant time period.[3]

_____

[1] "Government Employees Insurance Company Statutory Financial Statements as of and for the Years Ended December 31, 2020 and 2019, Supplemental Schedules," California Department of Insurance, https://interactive.web.insurance.ca.gov/sdrive/companyprofile/2020/propertyAndCasualty/annual/22063.2020.P.AN.PF.O.J.4177661.pdf (last visited Feb. 8, 2022).
[2] *See* "CA COVID-19 Premium Refund Report Submissions - Company F to H," California Department of Insurance, at "GEICO Grp - Group# 31 - Bulletin 2020-3 Explanatory Memo," http://www.insurance.ca.gov/0250-insurers/0300-insurers/0100-applications/rsb-forms/2020/2020-3-submissions/indexF2H.cfm?orderBy_315618=TITLE%7Casc&iPage_315618=4&FilterByLetter_315618=&itemid_315618=2 (last visited Feb. 8, 2022).
[3] *See id.* at worksheets for "GEICO Gen Ins Co - NAIC# 35882," "GEICO Ind Co - NAIC# 22055," and "GEICO Cas Co - NAIC# 41491."

CLASS ACTION COMPLAINT

**Plaintiff**

14.     Plaintiff is an adult resident of Salinas, California. Plaintiff held personal auto insurance policies purchased from GEICO General Insurance Company during the time period relevant to this lawsuit. As described in more detail herein, as a result of the global COVID-19 pandemic and corresponding drop in automobile use and traffic, the credit given by GEICO is wholly inadequate to compensate Plaintiff for her overpayments.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

**A.     The Global COVID-19 Pandemic and State-Mandated Social Distancing Measures**

15.     In late December 2019, a novel coronavirus known as SARS-CoV-2 began to spread around the globe. The virus causes a disease called COVID-19. By mid-January, cases of COVID-19 were confirmed in the United States.

16.     By mid-March, there were thousands of confirmed cases of COVID-19 across the United States and hundreds in the State of California alone.

17.     Like many states around the country, California responded to the worsening COVID-19 crisis with measures designed to increase, and often mandate, social distancing in order to slow the spread of the virus.

18.     On March 4, 2020, Governor Gavin Newsom proclaimed a State of Emergency in California as a result of COVID-19. In the following weeks, the state rolled out a series of social distancing measures, including, for example, recommendations that older adults and those with elevated risk should self-isolate.

19.     On March 19, 2020, Governor Newsom instituted a statewide stay-at-home order,[4] making California among the first states to establish such an order. With some exceptions, the order mandated "all individuals living in the State of California to stay home."[5]

---

[4] Executive Order N-33-20 (Mar. 19, 2020), https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf.
[5] *Id.* ¶ 1.

20.     In the time since Governor Newsom first instituted the stay-at-home order, California's progress toward reopening has been halting, and additional stay-at-home orders have been imposed in response to the spread of COVID cases.

**B.      GEICO Has Obtained a Windfall Due to the Dramatic Decrease in Automobile Use and Traffic Caused by COVID-19**

21.     Although businesses across the United States have almost uniformly suffered as a result of COVID-19, state-wide stay-at-home orders, and other social distancing measures, the auto insurance industry has benefited. In fact, auto insurance—a $250 billion industry—stands to secure a windfall from COVID-19-related restrictions. The reason is simple. As one report put it: "With shelter-in-place restrictions and business closings, most people stopped driving or reduced their driving dramatically. With fewer cars on the road, there were dramatically fewer accidents. Fewer motor vehicle accidents mean fewer auto insurance claims."[6]

22.     Beginning in mid-March of 2020, the number of miles driven by individuals has dropped dramatically because of COVID-19. This includes the State of California. Through the use of cell phone location data, it has been reported that vehicle miles traveled in California dropped significantly from their January 2020 average in March and April of 2020:[7]

| Date Range | Decrease in Miles Traveled |
|---|---|
| March 15 - March 21 | -53% |
| March 22 - March 28 | -72% |
| March 29 - April 4 | -74% |
| April 5 - April 11 | -77% |
| April 12 - April 18 | -74% |
| April 19 - April 25 | -71% |

---

[6] *See* Center for Economic Justice & Consumer Federation of America, Personal Auto Insurance Premium Relief in the COVID-19 Era at 5 (May 7, 2020) ("CEJ/CFA Report"), https://consumerfed.org/wp-content/uploads/2020/05/Auto-Insurance-Refunds-COVID-19-Update-Report-5-7-20.pdf.
[7] *See id.* at 6-8.

Upon information and belief, decreases in pre-COVID miles traveled continued through the end of 2020, and will continue for the foreseeable future.[8]

23.     Automobile accidents have also decreased. According to the Road Ecology Center at the University of California, Davis, traffic collisions, including those involving injuries or fatalities, dropped by roughly half after California instituted its stay-at-home order.[9]

24.     This dramatic decrease in driving and auto accidents allowed auto insurance companies, including GEICO, to unfairly profit at the expense of their customers during the COVID-19 pandemic. Auto insurance rates, including those set by GEICO, are intended to cover the claims and expenses that they expect to occur in the future, extrapolated from historical data. Thus, as explained in the joint report by the Center for Economic Justice and the Consumer Federation of America:

> Because of COVID-19 restrictions, the assumptions about future claims
> underlying insurers' rates in effect on March 1 became radically incorrect
> overnight. When roads emptied, the frequency of motor vehicle accidents and
> insurance claims dropped dramatically and immediately. The assumptions in
> insurers' rates covering time-frames from mid-March forward about future
> frequency of claims became significantly wrong when the roads emptied
> because of Stay-At-Home orders and business closures starting in mid-March.
> The then-current rates became excessive not just for new policyholders going
> forward, but also for existing policyholders whose premium was based on now-
> overstated expectation about insurance claims.[10]

---

[8] *See id.* at 2; *see also* Center for Economic Justice & Consumer Federation of America, Auto Insurance Refunds Needed as New Data Show Crashes Remain Well Below Normal Due to Pandemic (Dec. 22, 2020), https://consumerfed.org/press_release/auto-insurance-refunds-needed-as-new-data-show-crashes-remain-well-below-normal-due-to-pandemic-23-fewer-accidents-in-september-and-october/.

[9] Fraser Shilling and David Waetjen, *Special Report: Impact of COVID19 Mitigation on Numbers and Costs of California Traffic Crashes*, Road Ecology Center, UC Davis, Apr. 1, 2020 (updated Apr. 15, 2020), https://roadecology.ucdavis.edu/files/content/projects/COVID_CHIPs_Impacts_updated_415.pdf.

[10] CEJ/CFA Report, *supra*, at 4.

CLASS ACTION COMPLAINT

25.     The excessive premiums collected and not refunded by GEICO during the COVID-19 pandemic have led to a substantial windfall in profits. According to its parent company, Berkshire Hathaway, GEICO reported pretax earnings of $ $3.428 billion in 2020. That is more than double GEICO's earnings over the same period in 2019.

**C.      GEICO Has Failed to Give Adequate Refunds to Plaintiff and Other Policyholders in California**

26.     According to conservative calculations by the Center for Economic Justice and the Consumer Federation of America based on motor vehicle accident data, at least a 30% minimum average premium refund to consumers would be required to correct the unfair windfall to auto insurance companies, including GEICO, just for the time period from mid-March through the end of April 2020.[11]

27.     At all relevant times, GEICO has been aware of the need to refund premiums in order to correct the unfair windfall it gained from policyholders in California as a result of the COVID-19 crisis. GEICO has likewise been aware of its excessive profits. Despite this, GEICO has failed to adequately return these profits to its customers.

28.     In spring 2020, GEICO announced the "GEICO Giveback." Under the program, GEICO gave customers a 15% credit on their personal auto insurance premiums, but only if they are new customers, or existing customers who renew their policy during the applicable time period. Specifically, the credit was given for six-month policies renewed or newly purchased for the period April 8, 2020 to October 8, 2020, and twelve-month policies renewed or newly purchased for the period April 8, 2020 to April 7, 2021. According to GEICO's website, the program has now ended.

29.     GEICO's credit program is inadequate to compensate its customers for the unfair windfall the company has gained as a result of COVID-19. For existing customers who renewed their policies, the credit does not apply at all to premiums that the customer paid on their previous policies. And even with respect to new and renewal policies, the 15% credit is

---

[11] CEJ/CFA Report, *supra*, at 12-13.

nowhere near the minimum 30% average refund benchmark that has been conservatively estimated as an adequate refund for just the first the first two months of the pandemic.

30.    With full knowledge that its program was inadequate, GEICO falsely claimed to its customers that it was in fact providing substantial and full relief. For example, on its website, GEICO falsely claimed that "shelter in place laws have reduced driving, and we are passing these savings on to our auto, motorcycle, and RV customers." Further, GEICO failed to disclose in this and other advertising the fact that the "GEICO Giveback" did not, in fact, pass the company's savings on to its customers; the fact and amount of its excessive profits caused by COVID-19; and the fact that its premiums are not based on an accurate assessment of risk during COVID-19.

31.    Not surprisingly, GEICO's refund program was met with immediate criticism. On April 13, 2020, the Consumer Federation of America gave GEICO's program a "D-" grade, which placed GEICO at or near the bottom of insurers receiving grades.[12] The CEJ/CFA report explained that GEICO's program "fails to match the relief to the relevant premium and policy," "doesn't provide relief for current policyholders," "fails to credit consumers for the current premium that has become excessive," and is "wrongly attempting to take credit for future – and in most cases distant future – rate reductions as if it were actually providing relief today to current policyholders."[13]

32.    In early February 2020, Plaintiff purchased a renewal auto insurance policy from GEICO for the period beginning on February 11, 2020 and ending on August 9, 2020. Plaintiff renewed again for the period beginning on August 10, 2020 and ending on February 10, 2021. Premiums were $871.20. With a "GEICO Giveback credit" of $130.68, Plaintiff paid $740.52 in premiums for that policy.

---

[12] *Report Card to Date on the $6.5 Billion+ Promised To Auto Insurance Customers as People Drive Less Due To COVID-19*, Consumer Federation of America (April 4, 2020), https://consumerfed.org/press_release/report-card-to-date-on-the-6-5-billion-promised-to-auto-insurance-customers-as-people-drive-less-due-to-covid-19/.
[13] CEJ/CFA Report, *supra*, at 16.

33.     During the time that Plaintiff was considering renewing her policy with GEICO, Plaintiff received advertisements, emails, and other information from GEICO representatives concerning the "Giveback." Plaintiff renewed her policy and did not cancel her policy with GEICO based on GEICO's failure to disclose to its customers the fact that the "GEICO Giveback" did not, in fact, pass the company's savings on to its customers; the fact and amount of its excessive profits caused by COVID-19; and the fact that its premiums are not based on an accurate assessment of risk during COVID-19. Had GEICO disclosed these facts, Plaintiff would not have renewed her GEICO policy in the summer of 2020.

34.     Under its insurance policies, including the policies of Plaintiff and the members of the putative class, GEICO has the discretion to make voluntary downward premium adjustments based on an insured's changed circumstances.

35.     GEICO improperly exercised that discretion by failing to issue refunds of the now-excessive premiums during changed circumstances, when it should have instead used its discretion, in good faith, to make appropriate adjustments.

36.     Plaintiff's policies described above were in effect during the time period during which most of the United States, including California, was significantly impacted by the global COVID-19 pandemic and during which stay-at-home orders, along with other measures and conditions, caused a widespread and dramatic decrease in automobile use and traffic. Despite this, GEICO only gave Plaintiff an inadequate 15% credit on her August 2020 renewal policy and no refund or credit for Plaintiff's previous six-month policy.

37.     In 1988, California voters approved Proposition 103 to further establish the public policy of the state and to "protect consumers from arbitrary insurance . . . practices, to encourage a competitive insurance marketplace . . . and to ensure that insurance is fair, available, and affordable to all Californians."  The people of the state declared with Proposition 103 that "[t]his law shall be liberally construed and applied in order to fully promote its underlying purposes . . . ."

38.     GEICO's collection and/or retention of such excessive premiums violates California public policy and contravenes Proposition 103's mandate to protect consumers from

arbitrary insurance practices, to encourage a competitive insurance marketplace, and to ensure that insurance is fair, available, and affordable for all Californians.

39.     Upon information and belief, thousands of other policyholders in California have been injured by GEICO's policy and practice of failing to provide adequate refunds to policyholders due to the COVID-19 pandemic.

40.     Plaintiff and the members of the putative class were unable to reasonably avoid these harms because the analysis required to determine premium refunds was within the exclusive knowledge of GEICO.

41.     Upon information and belief, thousands of other policyholders in California have been injured by GEICO's policy and practice of failing to provide adequate refunds to policyholders due to the COVID-19 pandemic.

## CLASS ACTION ALLEGATIONS

42.     Pursuant to Fed. R. Civ. P. 23(a) and 23(b), Plaintiff brings this action individually and on behalf of all similarly situated individuals.

43.     The proposed class is defined as follows: All California residents who purchased personal automobile, motorcycle, or RV insurance from GEICO covering any portion of the time period from March 1, 2020 to the present.

44.     The members of the class are so numerous that joinder of all members is impracticable. While the precise number of class members has not been determined at this time, upon information and belief, there are thousands of individuals in the class. The identities of the class members can be determined from GEICO's records.

45.     There are questions of law and fact common to the class that predominate over questions solely affecting individual members.

46.     The common questions of law and fact include, but are not limited to:

    a.   Whether GEICO has a common policy or practice of failing to provide adequate refunds to policyholders due to the COVID-19 pandemic;

    b.   Whether GEICO's refund program is inadequate;

    c.   Whether GEICO violated the covenant of good faith and fair dealing;

d.  Whether GEICO was unjustly enriched as a result of its failure to provide adequate refunds to its customers;

e.  Whether GEICO's failure to provide adequate refunds to its customers is unfair;

f.  Whether GEICO has violated California consumer protection laws through its failure to provide adequate refunds to its customers and its failure to disclose the inadequacy of its refunds; and

g.  the proper measure and calculation of damages.

47.  The questions of law and fact listed above will yield common answers for Plaintiff and the class as to whether GEICO is liable for the alleged legal violations.

48.  Plaintiff's claims are typical of those of the members of the class. Plaintiff, like other class members, was subject to the unlawful practices described herein.

49.  Plaintiff will fairly and adequately protect the interests of the class and has retained counsel experienced in complex class action litigation.

50.  Class treatment is appropriate under Fed. R. Civ. P. 23(b)(2) because GEICO has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class.

51.  This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members. A class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy because, in the context of similar litigation, individual plaintiffs often lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to GEICO's policies and practices. There will be no difficulties in managing this action.

52.     In the alternative, class treatment is appropriate under Fed. R. Civ. P. 23(c)(4) because this is a case in which class adjudication of particular issues would serve the interests of judicial economy.

## CAUSES OF ACTION

### COUNT I

**Breach of Contract - Violation of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Putative Class)**

53.     Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

54.     Plaintiff and the members of the putative class purchased insurance contracts from GEICO and performed their contractual obligations thereunder.

55.     GEICO owed Plaintiff and the members of the putative class a duty of good faith and fair dealing by virtue of their contractual relationship.

56.     Under the insurance contracts, GEICO had the discretion to make voluntary downward premium adjustments based on an insured's changed circumstances.

57.     Plaintiff and the members of the putative class had a reasonable expectation that GEICO would exercise this discretion fairly and in good faith, without depriving Plaintiff and the members of the putative class of their right to have the premiums collected for their insurance coverage limited to no more than a fair rate of return.

58.     GEICO's failure to return sufficient premiums has disappointed the legitimate expectations of Plaintiff and the members of the putative class of having premiums collected for their insurance coverage that are limited to no more than a fair rate of return.

59.     GEICO's conduct has thereby deprived Plaintiff and the members of the putative class of one of the key benefits of their contracts and constitutes a willful violation of the obligation of good faith and fair dealing owed for the purpose of unfairly maximizing revenue from premiums paid by Plaintiff and members of the putative class.

60.     In addition, GEICO gave more weight to its own interests than to the interests of its policyholders. This conduct violated the higher standard of good faith and fair dealing to

12

which insurers are held due to the special relationship existing between insurer and insured, which is characterized by elements of public interest, adhesion, and fiduciary responsibility.

61.     Plaintiff and the members of the putative class have been injured as a direct and proximate result of GEICO's unlawful conduct.

## COUNT II[14]

### Unjust Enrichment/Quasi-Contract

### (On Behalf of Plaintiff and the Putative Class)

62.     Plaintiff pleads this Count in the alternative to her other Counts herein.

63.     As a result of GEICO's failure to provide adequate refunds to its customers as described herein, GEICO has been unjustly enriched.

64.     GEICO was enriched under circumstances that it cannot conscientiously retain its gain at Plaintiff's and the putative class's expense.

65.     Plaintiff and the members of the putative class have been injured as a direct and proximate result of GEICO's unlawful conduct.

## COUNT III

### Violation the California Unfair Competition Law ("UCL")

### Cal. Bus. & Prof. Code § 17200 *et seq.*

### (On Behalf of Plaintiff and the Putative Class)

66.     Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

67.     Plaintiff and GEICO are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

68.     The UCL defines unfair competition to include any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

69.     By committing the acts and practices alleged herein, GEICO has engaged in unfair business acts and practices in violation of the UCL.

---

[14] The Court has dismissed Plaintiff's unjust enrichment claim. (ECF No. 64 at 13.)

70.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims. GEICO has violated the UCL's proscription against unfair business practices by, among other things:

       a.  failing to fully refund premiums with full knowledge of the amount and extent of their excess and the fact that they are not based on an accurate assessment of risk;

       b.  failing to refund premiums to the consumers who initially paid those premiums, and instead giving a credit only for new or renewal business, thereby intentionally using the global COVID-19 pandemic as a means to gain new business and obtain unfair economic advantage;

       c.  falsely claiming to its customers that it is providing substantial and full relief through its "Giveback" program and failing to disclose that the program does not, in fact, provide full relief; and

       d.  failing to disclose the fact that it is earning excessive profits, or the amount of those profits.

71.     There is no societal benefit from GEICO's conduct—only harm to consumers. GEICO has engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers, and the gravity of its conduct outweighs any alleged benefits attributable to such conduct.

72.     There were reasonably available alternatives to further GEICO's legitimate business interests, other than the conduct described herein.

73.     Plaintiff and the members of the putative class paid premiums to GEICO and did not have those premiums refunded, and they purchased, renewed, and did not cancel their policies, as a result of GEICO's unfair conduct.

74.     The injury caused by GEICO's failure to provide adequate refunds is substantial in light of very conservative calculations that a 30% minimum average premium refund to

1  would be required to correct the unfair windfall just for the time period from mid-March

2  through the end of April 2020.

3      75.    Plaintiff and the members of the putative class have been injured as a direct and

4  proximate result of GEICO's conduct in violation of UCL.

5      76.    Through its practices, GEICO has improperly obtained and continues to

6  improperly obtain and retain money from Plaintiff and the members of the putative class.

7      77.    Plaintiff therefore requests that this Court grant the relief enumerated below.

8  Otherwise, Plaintiff and the members of the putative class may be irreparably harmed and/or

9  denied an effective and complete remedy.

10                              **PRAYER FOR RELIEF**

11      **WHEREFORE**, Plaintiff, individually and on behalf of the members of the putative

12  class, prays for relief as follows:

13      A.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23;

14      B.    The appointment of Plaintiff as class representative and her counsel as class

15            counsel;

16      C.    A declaration that the practices complained of herein are unlawful and violate

17            the laws of California alleged herein;

18      D.    An injunction against Defendants from engaging in the unlawful practices

19            complained of herein;

20      E.    Awarding Plaintiff and the members of the putative class their damages in an

21            amount to be determined at trial, including compensatory damages,

22            consequential damages, punitive damages, and any other damages provided

23            under relevant laws;

24      F.    Disgorgement of, restitution of, and/or imposing a constructive trust upon, the

25            ill-gotten gains derived by Defendants from their unjust enrichment;

26      G.    An order awarding Plaintiff and the class attorneys' fees, costs, and expert costs;

27      H.    An order awarding Plaintiff and the members of the putative class pre-judgment

28            and post-judgment interest, as allowed by law; and

15

1    I.      Such further relief as may be appropriate.

2                        **DEMAND FOR JURY TRIAL**

3    Plaintiff demands a trial by jury on all issues so triable.

4

5    Dated: February 10, 2022          By:    /s/ Melody L. Sequoia

6                                              Melody L. Sequoia, CA State Bar No. 309163

7                                      Melody L. Sequoia, CA State Bar No. 309163
                                       melody@sequoialawfirm.com
8                                      THE SEQUOIA LAW FIRM
                                       530 Oak Grove Avenue, Suite 102
9                                      Menlo Park, California 94025
                                       Telephone: (650) 561-4791
10                                     Facsimile: (650) 561-4817

11                                     Matthew C. Helland, CA State Bar No. 250451
                                       helland@nka.com
12                                     NICHOLS KASTER, LLP
                                       235 Montgomery Street, Ste. 810
13                                     San Francisco, CA 94104
                                       Telephone: (415) 277-7235
14                                     Facsimile: (415) 277-7238
15

16                                     Matthew H. Morgan, MN State Bar No. 0304657*
                                       morgan@nka.com
17                                     Robert L. Schug, CA State Bar No. 249640
                                       schug@nka.com
18                                     Chloe A. Raimey, MN State Bar No. 0398257*
                                       craimey@nka.com
19                                     NICHOLS KASTER, PLLP
20                                     80 S. 8th Street, Ste. 4700
                                       Minneapolis, MN, 55402
21                                     Telephone: (612) 256-3200
                                       Facsimile: (612) 338-4878
22

23                                     Ryan F. Stephan, IL State Bar No. 6273101*
                                       rstephan@stephanzouras.com
24                                     James B. Zouras, IL State Bar No. 6230596*
                                       jzouras@stephanzouras.com
25                                     Teresa M. Becvar, IL State Bar No. 6312328*
                                       tbecvar@stephanzouras.com
26                                     Catherine T. Mitchell, IL State Bar No. 6321142*
                                       cmitchell@stephanzouras.com
27                                     STEPHAN ZOURAS, LLP
                                       100 N. Riverside Plaza, Suite 2150
28

                                           16

Chicago, IL 60606
Telephone: (312) 233-1550
Facsimile: (312) 233-1560

*Pro hac vice application forthcoming*

Attorneys for Plaintiff Jessica Day
and the putative class.

17