**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JESSICA DAY,<br><br>    Plaintiff,<br><br>v.<br><br>GEICO CASUALTY COMPANY, et al.,<br><br>    Defendants. | Case No. 21-cv-02103-BLF<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION**<br><br>[Re: ECF No. 78] |

   This lawsuit concerns a premium credit program run by Defendants GEICO Casualty Company, GEICO General Insurance Company, and GEICO Indemnity Company ("GEICO"). At the beginning of the COVID-19 pandemic in April 2020, GEICO announced the "GEICO Giveback," a program that provided a 15% discount on new and renewed insurance policies. Plaintiff Jessica Day alleges that GEICO engaged in unfair business practices by failing to provide additional refunds despite fewer claims resulting from fewer miles driven and fewer vehicle accidents. Plaintiff has moved to certify a class including "[a]ll California residents who purchased personal automobile, motorcycle, or RV insurance from GEICO covering any portion of the time period from March 1, 2020 to the present." ECF No. 78 ("Mot."); *see also* ECF No. 101 ("Reply"). GEICO opposes, arguing class certification is improper. ECF No. 93 ("Opp."). Both parties make evidentiary objections. The Court held a hearing on this motion on September 29, 2022.[1] For the reasons explained below, the Court GRANTS Plaintiff's motion for class

---

[1] Since argument, GEICO has submitted a notice of supplemental authority. ECF No. 113; *see Torrez v. Infinity Ins. Co. et al.*, No. 2:22-cv-05171-SVW-JC (C.D. Cal. Oct. 11, 2022). The

certification.

## I. BACKGROUND

As alleged in the Complaint, there has been "a dramatic reduction in driving, and an attendant reduction in driving-related accidents" due to COVID-19 stay-at-home orders. ECF No. 68 ("FAC") ¶¶ 2–3. Compared to the January 2020 average, California motorists drove approximately 75% fewer miles between mid-March and late April 2020, resulting in approximately 50% fewer crashes. *Id.* ¶¶ 22–23. This decrease in driving and accidents reduced the number of claims paid by auto insurance companies, resulting in an alleged increase in profits. *Id.* ¶¶ 3, 21. At least one published report estimates that a 30% refund of premiums to insured drivers would be required to make up for the excess premiums paid from mid-March to late April 2020. *Id.* ¶¶ 4, 26.

In response, GEICO instituted the "GEICO Giveback," under which GEICO gave new or renewing customers a 15% credit on their personal auto insurance premiums for six-month policies between April 8, 2020 and October 8, 2020, or for twelve-month policies between April 8, 2020 and April 7, 2021. FAC ¶ 28. In connection with the program, GEICO stated that "shelter in place laws have reduced driving, and we are passing these savings on to our auto, motorcycle, and RV customers." *Id.* ¶ 30. Plaintiff renewed her GEICO policy in February 2020 and August 2020 and was charged a premium of $871.20. *Id.* ¶ 32. With the Giveback credit of $130.68, she paid $740.52 in premiums for the policy renewed in August 2020. *Id.*

Plaintiff seeks to represent a class of "[a]ll California residents who purchased personal automobile, motorcycle, or RV insurance from GEICO covering any portion of the time period from March 1, 2020 to the present." FAC ¶ 43. Following the Court's Orders on GEICO's two motions to dismiss, *see* ECF Nos. 64, 87, Plaintiff has one remaining claim under the California Unfair Competition Law ("UCL"). FAC ¶¶ 66-77. Plaintiff alleges that GEICO "engaged in unfair business acts and practices in violation of the UCL" by (1) failing to give an appropriate refund of premiums based on excess profit and an accurate risk assessment; (2) giving the refund

---

Court has reviewed this filing and will address it in a separate Order.

only to customers who renewed their policies; (3) falsely claiming that the Giveback provided "substantial and full relief"; and (4) failing to disclose its excessive profits. *Id.* ¶¶ 69-70.

## II. EVIDENTIARY OBJECTIONS

Before addressing the merits of the class certification motion, the Court will consider the parties' evidentiary objections. GEICO objects to Plaintiff's expert report under Evidence Rule 702. Opp. at 13-20. Plaintiff objects to a declaration from a GEICO Vice President under Federal Rule of Civil Procedure 37. Reply at 12-13.

### A. GEICO's Objections to Plaintiff's Expert Report

#### i. Standard

The Ninth Circuit has indicated that courts should analyze the admissibility of expert testimony presented in support of a motion for class certification under the standard outlined in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) ("In its analysis of [defendant's] motions to strike, the district court correctly applied the evidentiary standard set forth in *Daubert* . . . ."). "Under *Daubert*, the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable." *Id.* (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145, 147-49 (1999)). Federal Rule of Evidence 702 states:

> A witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The standard requires a court to decide whether to admit or exclude evidence based not on its persuasiveness but on its scientific reliability and relevance, noting that "an expert's 'inference or assertion must be derived by the scientific method' to be reliable." *Ellis*, 657 F.3d at 982 (quoting *Daubert*, 509 U.S. at 590). The trial court has "broad latitude" in deciding how to determine the reliability of an expert's testimony, as well as in ultimately determining whether the testimony is

3

reliable. *Id.* (citing *Kumho Tire*, 526 U.S. at 152). "The party offering the expert bears the burden of establishing that Rule 702 is satisfied." *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1069 (C.D. Cal. 2015) (quoting *Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, No. CV 02-2258 JM (AJB), 2007 WL 935703, at *4 (S.D. Cal. Mar. 7, 2007)).

### ii. The Report

GEICO argues that the Court should strike the report of GEICO's expert, Allan Schwartz, *see* Mot. Exh. 11 ("Report"); Reply Exh. 17 ("Rebuttal Report"), under the *Daubert* standard. Opp. at 13-20. Schwartz is the president of an actuarial consulting firm, which he started in 1984. Report ¶ 1. He has served as the Assistant Commissioner of the New Jersey Department of Insurance and the Chief Actuary for the North Carolina Department of Insurance. *Id.* He is a member of the American Academy of Actuaries and a fellow of the Casualty Actuarial Society. *Id.* ¶ 2. He has provided expert actuarial testimony in administrative and court proceedings in about twenty jurisdictions. *Id.* ¶ 5.

The Report proposes a formula for calculating damages on a classwide basis:

Harm = Reasonable Credit – GEICO Giveback Credit

Report ¶ 42. It then presents the following equation:

$H(I,J) = PP(I,J) * [B(I,J) - A(I,J)]$

where $H(I,J)$ is the harm to class member I for policy J; $PP(I,J)$ is the policy premium for class member I for policy J; $A(I,J)$ is the refund applied for class member I for policy J under the GEICO Giveback program (15% or 0%); and $B(I,J)$ is the "appropriate/reasonable premium credit/refund percentage." *Id.*

Schwartz will determine the value of B, which he defines as "a fair percentage impact for COVID-19's impact on insurance costs," and which will be the same for all consumers. Report ¶¶ 42, 46. Schwartz states that he will calculate the value of B based on GEICO's records, including "claim frequency, claim severity, pure premiums and loss ratios." *Id.* ¶ 45. The value of B could be different for different time periods, but within any given time period it would be the same for every class member. *Id.* ¶ 46.

4

### iii. Analysis

GEICO asserts that Schwartz's report must be excluded under *Daubert* and provides a report from its own expert, Nancy Watkins. *See* Opp. Exh. C ("Opp. Report"). GEICO challenges the Report, arguing: (1) it does not use a recognized methodology; (2) it is incomplete and vague; (3) it cherry picks data; (4) it improperly goes back in time to calculate rates; and (5) it conflicts with the regulatory ratemaking process. Opp. at 13-20.

The first and fourth arguments are closely tied. GEICO asserts that the Report does not and cannot use a recognized methodology because there is no recognized "actuarial method for revising rates in hindsight." Opp. at 13-14. In a similar vein, GEICO later argues that the methodology is improper because one cannot go back in time to revise rates, noting that because of uncertainty during the pandemic, it would be impossible to go back in time to calculate the proper rates with the knowledge we have today. *Id.* at 16-19.

Preliminarily, Schwartz states that his methodology is consistent with the Actuarial Standards Board's "Actuarial Standards of Practice" and the Casualty Actuarial Society's "Statement of Principles. Report ¶ 8. And the methodology is not completely novel. The procedure that Schwartz plans to use to calculate a proper rate was also used by the Texas Commissioner of Insurance in an insurance case, and the methodology was accepted by the Texas Court of Appeals on appeal. Rebuttal Report ¶ 21, Exhs. E-F; *see State Farm Lloyds v. Rathgeber*, 453 S.W.3d 87 (Tex. App. 2014). And the Commissioner in the Texas matter recognized that "ratemaking is a prospective endeavor" and that the methodology would not be based on hindsight, but it would instead calculate the rates that "should have set prospectively from the perspective of a time preceding the period or period in which the rate was used." *Id.* at 94-95. As there, Schwartz will focus on "information known or 'knowable'" at the time of the calculation. *See id.* at 95. The Court finds these arguments persuasive and thus disagrees that the methodology is unreliable.

The Court next turns to GEICO's assertion that the Report is incomplete and vague. Opp. at 14-15. GEICO protests that the identified formula misses the key point, which is how to determine the new fair rate while isolating pandemic costs. *Id.* at 14. GEICO wants Schwartz to

provide "a sample calculation." *Id.* at 15. The methodology proposed at this stage is fairly bare bones. While Schwartz explains how and why a single percentage would apply classwide, he does not explain how he will calculate that percentage. Schwartz does identify what evidence and data he will rely upon, and he asserts that he has not been able to calculate the percentage at this stage because he needs additional data from GEICO, which will be provided in discovery. Report ¶ 45; Rebuttal Report ¶ 30.

A court in the District of Minnesota recently considered a similar question. *See Taqueria El Primo LLC v. Ill. Farmers Ins. Co.*, No. 19-3071 (JRT/BRT) (D. Minn. Dec. 28, 2021). In that case, plaintiffs used an expert report from Schwartz to support damages at the class certification stage, and defendant insurance companies sought to strike the report on the basis that the methodology was not "the product of reliable principles and methods," but instead was "speculative." *Id.* at *3. In that case, Schwartz proposed that damages could be calculated on a classwide basis using a common "factor." *Id.* at *12. Schwartz did not calculate the factor, but he did explain "how it would be used, how it would apply on a classwide basis, a list of data sources he would consider, and other data that may affect the Factor." *Id.* at *18. The court decided that "Schwartz provides a sufficient explanation such that the Court concludes that it is possible that he may be able to derive the Factor and, if he is able to do so, it will be possible at that time to determine whether it is the product of the application of reliable principles and methods." *Id.* at *19. The court further stated that even if the Factor was uncalculated and thus speculative, "Schwartz's explanation of how he will calculate it suggest that it may not be speculative once he does." *Id.* The court ignored some of defendants' arguments as "attacks on the accuracy of the proposed model" more properly addressed later in the case. *Id.* The court thus denied the motion. *Id.* at 20.

Recognizing that the Eight Circuit requires only a "focused *Daubert* inquiry" at the class certification stage, *see In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 610 (8th Cir. 2011), the Court agrees with the above approach. While it may have been helpful for the Report to have included more detail at this stage, Schwartz does identify what data sources he would consider, as well as how the percentage would be used and how it would apply on a classwide

basis. Further, the Court notes that some of the information required to further develop the model is in GEICO's hands. And Schwartz is not required to complete the model or "show that his method will work with certainty at this time." *See Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (quoting *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 652 (N.D. Cal. 2007)). On this basis, the Court concludes that the Report is sufficiently complete at this stage. GEICO may choose to challenge the accuracy of the damages calculation later in the case.

Third, GEICO argues that Schwartz will necessarily need to cherry pick the data, as it will be impossible to isolate pandemic-related costs. Opp. at 15-16. Schwartz objects to this characterization, stating that he does not propose to isolate pandemic costs, but instead would present evidence of the impact of COVID-19 on costs. Rebuttal Report ¶ 36. Because other costs have already been incorporated into the rates, an analysis of those costs is not necessary. *Id.* The Court agrees that "cherry picking" will not be necessary because non-pandemic costs have already been incorporated into GEICO's rates. Further, the Court notes as persuasive the fact that GEICO itself, in a recent Massachusetts rate filing, made various data adjustments to account for the impacts of COVID-19. *See* Rebuttal Report ¶ 24, Exh. I. This suggests that Schwartz could similarly isolate the impact of COVID-19 on costs.

Finally, GEICO argues that the Report is inconsistent with California's insurance ratemaking regulations and that when the law conflicts with actuarial principles, the law controls. Opp. at 19-20. GEICO is resurrecting legal arguments from the motion to dismiss as to whether Plaintiff can properly bring this challenge in court. The Report's methodology is consistent with Plaintiff's theory of the case. However, the Court remains concerned that this litigation is not the proper forum to resolve this dispute.

The Court therefore OVERRULES GEICO's Rule 702 and *Daubert* objections to the Report.

### B. Plaintiff's Objections to GEICO's Ward Declaration

Under Federal Rule of Civil Procedure 26, a party must identify "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing

7

party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i).  A party must also provide a copy or description of "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii).

"Rule 37(c)(1) gives teeth to these requirements by forbidding the use . . . of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).  Under Rule 37, if a party does not provide information or identify a witness as required by Rule 26, then the party cannot "use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  The violating party has the burden of showing that the exclusion was substantially justified or harmless.  *R&R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1246 (9th Cir. 2012).

GEICO filed a Declaration from Russell Ward, an assistant Vice President, and supporting exhibits with its opposition to the motion for class certification.  Opp. Exh. A ("Ward Declaration").  Plaintiff objects to these documents under Rule 37.  Reply at 12-13.  Plaintiff submitted a declaration from her attorney stating that GEICO did not disclose Ward as a witness nor the data summarized in the exhibits as evidence.  ECF No. 101-1 ¶ 2.  Plaintiff provides GEICO's initial disclosures under Rule 26, and it does not identify Ward as a potential witness.  Reply Exh. 19.  GEICO has not responded to Plaintiff's objections, and it therefore has not shown that the failure to disclose was substantially justified or harmless.

The Court SUSTAINS Plaintiff's Rule 37 objections to the Ward Declaration.

## III.   CLASS CERTIFICATION

Federal Rule of Civil Procedure 23 governs class certification.  "The party seeking class certification has the burden of affirmatively demonstrating that the class meets the requirements of [Rule] 23." *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1066 (9th Cir. 2021) (citation omitted).  "As a threshold matter, a class must first meet the four requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Id*.

"In addition to Rule 23(a)'s requirements, the class must meet the requirements of at least

one of the three different types of classes set forth in Rule 23(b)." *Stromberg*, 14 F.4th at 1066 (internal quotation marks and citation omitted); *see also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (en banc). "To qualify for the third category, Rule 23(b)(3), the district court must find that 'the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Olean*, 31 F.4th at 663-64 (quoting Rule 23(b)(3)).

"Before it can certify a class, a district court must be satisfied, after a rigorous analysis, that the prerequisites of both Rule 23(a) and 23(b)(3) have been satisfied." *Olean*, 31 F.4th at 664 (internal quotation marks and citation omitted). "[P]laintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Id.* at 665. "In carrying the burden of proving facts necessary for certifying a class under Rule 23(b)(3), plaintiffs may use any admissible evidence." *Id.*

Plaintiff asserts that that all four requirements of Rule 23(a) are satisfied in this case, and that certification of a damages class is appropriate under Rule 23(b)(3). GEICO argues that Plaintiff has not satisfied the requirements of either Rule 23(a) or Rule 23(b)(3).

### A.   Rule 23(a) Requirements

#### 1.   Numerosity

Rule 23(a)(1) requires that the size of the proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No exact numerical cut-off is required; rather, the specific facts of each case must be considered." *Litty v. Merrill Lynch & Co.*, No. CV 14-0425 PA (PJWx), 2015 WL 4698475, at *3 (C.D. Cal. Apr. 27, 2015). "[N]umerosity is presumed where the plaintiff class contains forty or more members." *Id.*

Plaintiff alleges that the proposed class would include over 2 million members. Mot. at 9; Mot. Exh. 2. GEICO does not dispute the class size or numerosity. *See* Opp.

The Court finds that the numerosity requirement is satisfied.

#### 2.   Commonality

Rule 23(a)(2) requires the plaintiff to show that "there are questions of law or fact common

to the class." Fed. R. Civ. P. 23(a)(2). But the requirement cannot be satisfied by any common question. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Id.* at 349-50 (internal quotation marks and citation omitted). The claim of common injury must depend on a common contention "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. "[C]ommonality only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012), *overruled on other grounds by Olean*, 31 F.4th 651.

Plaintiff asserts several questions of law or fact that are common to the class for the UCL claim, as well as common evidence to prove the claim. Mot. at 10-12. The common questions include: whether GEICO had a policy or practice of charging rates that were not based on an accurate risk assessment; whether GEICO had a policy or practice of failing to provide adequate refunds to policyholders; whether GEICO's conduct constitutes unfair competition under the UCL; whether the conduct caused class members to lose money; and the proper calculation of relief for the class. *Id.* at 10. Plaintiff also points to common evidence to prove these claims, including proof that GEICO recognized the need to provide relief; evidence of the parameters of the GEICO Giveback program; evidence of how the Giveback was applied uniformly to class members; and evidence addressing whether the Giveback was sufficient to remedy excessive premiums paid in light of the pandemic. *Id.* at 11. Finally, Plaintiff asserts that class members share common questions regarding relief, as the losses suffered by each member will be calculated through a common method. *Id.* at 12. GEICO does not dispute commonality. *See* Opp. A thorough review of Plaintiff's arguments supporting commonality satisfies the Court that questions regarding the legality of GEICO's conduct under the UCL are common to all class members. And the evidence that will be used to answer that question is common to all class members.

### 3. Typicality

Rule 23(a)(3) requires that "the [legal] claims or defenses of the representative parties [be]

typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (internal quotation marks and citation omitted).  "The requirement is permissive, such that representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation marks and citation omitted).  However, "[a] court should not certify a class if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Id*. (internal quotation marks and citation omitted).

Plaintiff asserts that she is typical because she suffered the same injury arising from the same course of conduct, and she asserts the same legal claim, as other class members.  Mot. at 13-14.  GEICO argues that Plaintiff is atypical of the class.  Opp. at 20-22.  GEICO argues that Plaintiff is atypical because the case is based on a "misapplication of the rate," and she does not, and cannot, argue that GEICO's rate was incorrectly applied to her.  Opp. at 20-21.  GEICO elaborates that a typical plaintiff would need to be one who could show that GEICO had "incorrectly applied its rate filing to the policyholder's individual characteristics."  Opp. at 22.

But GEICO here is misinterpreting Plaintiff's theory of the case.  In its Order on the first motion to dismiss in this case, the Court allowed Plaintiff to move forward with a claim challenging GEICO's application of its rates as unfair in light of COVID-19.  *Day v. GEICO Cas. Co.*, 580 F. Supp. 3d 830, 837 (N.D. Cal. 2022).  She is not challenging GEICO's application of its rates as unfair in light of her personal characteristics.  Day is a typical plaintiff for the assertion that GEICO's application of its rates was unfair during COVID-19, as she held a GEICO insurance policy during the pandemic.

The Court finds that the typicality requirement is satisfied.

### 4. Adequacy

To determine Plaintiff's adequacy as class representative, the Court "must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other

11

1  class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously
2  on behalf of the class?" *Ellis*, 657 F.3d at 985 (internal quotation marks and citation omitted).
3  Plaintiff asserts that she has "shown her commitment to vigorously prosecuting the litigation" and
4  that she "has no interests antagonistic to the class." Mot. at 14. The record does not reflect any
5  conflicts of interest. Plaintiff has demonstrated her ability and intention to prosecute this action
6  vigorously on behalf of the class. GEICO states that it challenges Plaintiff's adequacy as class
7  representative, but the substance of its argument goes to typicality and was addressed above. Opp.
8  at 20-22. The Court finds Plaintiff is an adequate class representative.

9  With regard to class counsel, the Court looks to the factors in Rule 23(g). Fed. R. Civ. P.
10 23(g). These include (1) the work counsel has done in identifying or investigating potential claims
11 in the action; (2) counsel's experience in handling class actions, other complex litigation, and the
12 types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the
13 resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Plaintiff
14 seeks to have Nichols Kaster, PLLP; Stephan Zouras, LLP; and Poulin | Willey | Anastopoulo,
15 LLC appointed as class counsel. Mot. at 19. Plaintiff asserts that the proposed class counsel will
16 fairly and adequately represent class members. *Id.* at 14-15. The Court previously appointed
17 Nichols Kaster and Stephan Zouras, along with the Sequoia Law Firm, as interim class counsel
18 under Rule 23(g). ECF No. 27. They have demonstrated an ability and intention to prosecute this
19 action vigorously on behalf of the class. Plaintiff seeks to add Poulin | Willey | Anastopoulo, LLC
20 as class counsel. Mot. at 15; *see* ECF No. 78-3. They have demonstrated they have dedicated
21 substantial resources to the case, have extensive experience litigating complex class actions, are
22 knowledgeable about the applicable law, and have the necessary resources to represent the class.
23 ECF No. 78-3. Defendant does not dispute the adequacy of class counsel. *See* Opp. The Court
24 finds that Nichols Kaster, PLLP; Stephan Zouras, LLP; and Poulin | Willey | Anastopoulo, LLC
25 are adequate counsel.

26 The Court finds that the adequacy requirement is satisfied.

27 **B.     Rule 23(b)(3)**

28 "In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must

show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Plaintiffs seek certification under Rule 23(b)(3). A class may be certified under Rule 23(b)(3) only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Further, parties seeking to certify a Rule 23(b)(3) class must also demonstrate that the class is sufficiently ascertainable." *Datta v. Asset Recovery Sols., LLC*, No. 15-CV-00188-LHK, 2016 WL 1070666, at *2 (N.D. Cal. Mar. 18, 2016).

### 1. Ascertainability

"[A] class is ascertainable if the class is defined with objective criteria and if it is administratively feasible to determine whether a particular individual is a member of the class." *Huynh v. Harasz*, No. 14-CV-02367-LHK, 2015 WL 7015567, at *13 (N.D. Cal. Nov. 12, 2015) (internal quotation marks and citation omitted). Plaintiff does not expressly address the issue of ascertainability. But the class definition relies on objective criteria—whether an individual was a California resident and purchased GEICO insurance during the relevant class period. GEICO does not dispute the ascertainability of the putative class.

The Court finds that the putative class is ascertainable.

### 2. Predominance of Common Questions

"When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Olean*, 31 F.4th at 668 (internal quotation marks and citation omitted). The plaintiffs need not show that they are likely to succeed on the common issues in the case. *See id.* at 667. "[A] district court cannot decline certification merely because it considers plaintiffs' evidence relating to the common question to be unpersuasive and unlikely to succeed in carrying the plaintiffs' burden of proof on that issue." *Id*. If the plaintiffs present evidence that could sustain a reasonable jury verdict on the merits of a common question as to all class members, a district court may conclude that the plaintiffs have carried their burden under

13

Rule 23(b)(3). *See id.*

Plaintiff asserts that common questions of law and fact predominate over individual questions in this case. As discussed above in the context of the Rule 23(a)(2) commonality inquiry, Plaintiff has demonstrated the existence of substantial common questions of law and fact getting to liability. GEICO does not dispute that common questions of law and fact predominate. *See* Opp. And the Court agrees that the common questions identified by Plaintiff predominate over any individual ones.

But that is not the end of the predominance inquiry. "Rule 23(b)(3)'s predominance requirement takes into account questions of damages." *Just Film*, 847 F.3d at 1120. Plaintiffs must propose a damages model that is consistent with its theory of liability and capable of measuring damages on a classwide basis. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34-35 (2013).

Plaintiff offers an expert report that proposes a method for calculating damages on a classwide basis. Report. As discussed above, GEICO raises several objections to the Report under Rule 702 and *Daubert*, *see* Opp. at 13-20, which the Court overrules. The Court further finds that Plaintiff proposes a damages model that is capable of measuring damages on a classwide basis. The model proposed by Schwartz would calculate a percentage refund applicable to all class members. Report ¶¶ 42, 46. This percentage refund could be applied to each policyholder's individual premium in the same way as the GEICO Giveback refund. While the appropriate percentage has not yet been determined, at the class certification stage a plaintiff need only "present a likely method for determining class damages, . . . it is not necessary to show that [the] method will work with certainty at this time." *Chavez*, 268 F.R.D. at 379 (quoting *In re Tableware*, 241 F.R.D. at 652). Plaintiff has sufficiently shown that damages can be calculated on a classwide basis.

The Court finds that the predominance requirement of Rule 23(b)(3) is satisfied.

### 3. Superiority of Class Action

To satisfy Rule 23(b)(3), Plaintiffs must demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

14

1   23(b)(3). Rule 23 lists the following factors that courts should consider in making this

2   determination: "(A) the class members' interests in individually controlling the prosecution or

3   defense of separate actions; (B) the extent and nature of any litigation concerning the controversy

4   already begun by or against class members; (C) the desirability or undesirability of concentrating

5   the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a

6   class action." Fed. R. Civ. P. 23(b)(3).

7         Plaintiff asserts that a class action is superior for efficiency, especially because individual

8   litigation would be uneconomic for potential plaintiffs. Mot. at 18. Plaintiff further states that

9   there is no other litigation pending in California and that the Northern District of California is an

10  appropriate forum for trial because the action involves California consumers. *Id.* Finally, Plaintiff

11  asserts that there are no manageability issues because all class members have common evidence

12  regarding liability and damages. *Id.* at 18-19.

13        GEICO focuses its arguments on manageability. Opp. at 10-12. It argues that a class

14  action could not sufficiently account for differences between policyholders, including differences

15  in the time period that they had GEICO insurance. *Id.* at 10-11. GEICO also argues that there

16  would be manageability issues in calculating a fair rate as part of the damages model, raising

17  issues such as the number of valuation dates, how to isolate pandemic costs, and the propriety of

18  what it considers retroactive ratemaking. *Id.* at 11-12.

19        GEICO's first argument focuses on differences among policyholders. But these are

20  accounted for in the proposed damages model. *See* Report ¶¶ 42-43. The model applies a

21  percentage reduction to the amount an individual policyholder actually paid. *Id.* ¶ 42. And the

22  amount paid accounts for policyholder differences, including differences in individual profiles and

23  differences in time periods that they had GEICO insurance. Rebuttal Report ¶¶ 51, 62. Therefore,

24  the damages model would not need to account for these differences. As noted by Plaintiff, the

25  proposed damages model is similar in theory to the GEICO Giveback, which gave a one-time 15%

26  premium reduction to all policyholders. It would also be consistent with the California Insurance

27  Commissioner Bulletins, which suggested insurers could give an "across-the-board premium

28  refund" to consumers using "an average percentage." Rebuttal Report Exh. D. Therefore,

15

1  differences between policyholders do not create a manageability problem.

2  Second, GEICO highlights complexities with calculating the damages model itself, arguing that these difficulties would make trial unmanageable. Opp. at 11-12. But these arguments get to the complexities of the damages model, and not the complexities of managing this case as a class action. The superiority analysis requires a court to consider whether a class action is superior to individual litigation. Even if this case were pursued by an individual plaintiff, that individual would still need to calculate what would have been a "fair rate" in order to determine what damages are appropriate. These arguments are not proper as part of a superiority analysis.

Finally, GEICO also raises several complexities that may arise related to timing. First, it notes that different class members would have had GEICO insurance policies over different time periods. Opp. at 11. Second, it questions for how many different valuation dates Schwartz will calculate fair rates, which will ultimately be used to calculate a percentage. *Id.* The Report states that the percentage ultimately calculated by Schwartz could vary by time period, but within any time period it would be the same for every class member. Report ¶ 46. It remains to be seen how many valuation dates Schwartz will use, but what ultimately matters for manageability as a class action is the number of percentages calculated and over how long a time period they each apply. Plaintiffs' model could present an appropriate percentage refund over a sufficiently long time period that there are no manageability issues with calculating damages classwide. If Plaintiff ultimately presents different percentages, each covering short windows, then the class may ultimately turn out to be unmanageable. GEICO could bring a motion for decertification at that time.

The Court finds that the superiority requirement of Rule 23(b)(3) is satisfied.

**IV.  ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Plaintiff's motion for class certification is GRANTED.

(2) Pursuant to Federal Rule of Civil Procedure 23, the Court hereby certifies the following class: All California residents who purchased personal automobile, motorcycle, or RV insurance from GEICO covering any portion of the time period

16

from March 1, 2020 to the present.

(3) Excluded from the Class are the Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

(4) The Court appoints Jessica Day as class representative; and Nichols Kaster, PLLP; Stephan Zouras, LLP; and Poulin | Willey | Anastopoulo, LLC as class counsel.

(5) Notice shall be provided to the class as required under Rule 23.

(6) Plaintiff shall submit a proposed notice plan within 30 days.

(7) This order terminates ECF No. 78.

Dated: October 31, 2022

BETH LABSON FREEMAN
United States District Judge