**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JESSICA DAY,<br><br>                    Plaintiff,<br><br>        v.<br><br>GEICO CASUALTY COMPANY, et al.,<br><br>                    Defendants. | Case No.  21-cv-02103-BLF<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Re:  ECF No. 171] |

Before the Court is Defendants GEICO Casualty Company, GEICO Indemnity Company, and GEICO General Insurance Company's (collectively "GEICO") Motion for Summary Judgment.  ECF No. 171 ("Mot.").  Plaintiff Jessica Day opposes the motion.  ECF No. 190 ("Opp.").  GEICO filed a reply in support of its motion.  ECF No. 199 ("Reply").  The Court held a hearing on the motion on December 14, 2023.  ECF No. 209.

For the following reasons, the Court DENIES GEICO's motion.

## I.    BACKGROUND

On April 8, 2020, near the beginning of the COVID-19 pandemic, GEICO announced the "GEICO Giveback," a program that provided a 15% discount on new and renewed auto and motorcycle insurance policies.  ECF No. 172-6 at 8.  Day alleges that GEICO unfairly profited from vehicle insurance premiums because the GEICO Giveback was insufficient to account for a reduction in claims due to fewer miles driven and fewer vehicle accidents during the pandemic.

In a series of Bulletins beginning on April 13, 2020, the California Insurance Commissioner, Ricardo Lara, and the California Department of Insurance ("CDI") directed insurance companies to issue premium relief to California policyholders to account for the curtailed activities of policyholders due to the COVID-19 pandemic and "stay at home" orders."

United States District Court
Northern District of California

ECF No. 171-1 ("Vocke Decl. Ex. C") at 17–29 (CDI Bulletins dated April 13, 2020, May 15, 2020, December 3, 2020, and March 11, 2021). In order to comply with the CDI Bulletins, GEICO regularly reported its data to the CDI. ECF No. 171-2 ("Ward Decl. Ex. C") at 19–25 (emails transmitting GEICO's reports and data on Bulletin compliance to the CDI); *see also* ECF No. 171-2 ("Ward Decl. Ex. I") at 51–53 (GEICO letter responding to the CDI's final order on Bulletin compliance by producing more data). On January 26, 2023, Ken Allen, Deputy Commissioner of the CDI's Rate Regulation Branch, emailed Angela Rinella of GEICO, stating:

> [B]ased on the data and other information submitted to the Department by [GEICO], the PPA premium previously returned to its California PPA policyholders under the Giveback Program, and the methodology utilized by the Department to calculate whether insurers returned a sufficient amount of PPA premium to account for the lower risk of loss during the COVID pandemic period, the Department has determined that GEICO is not required to return any additional premium to its California PPA policyholders.

ECF No. 171-2 ("Ward Decl. Ex. D") at 27–32.

On March 25, 2021, Day filed this action on behalf of a putative class asserting causes of action for breach of contract, unjust enrichment, frustration of purpose, California's False Advertising Law, and California's Unfair Competition Law. *See* ECF No. 1 ("Compl."). Following the Court's order granting in part with leave to amend and denying in part GEICO's motion to dismiss, Plaintiff filed an amended complaint in February 2022, bringing claims for breach of contract and violation of California's Unfair Competition Law under the "unfair" prong. *See* ECF No. 68 ("Am. Compl."). On June 14, 2022, the Court granted GEICO's motion to dismiss Plaintiff's breach of contract claim. *See* ECF No. 87. GEICO answered the Amended Complaint in July 2022. *See* ECF No. 89 ("Answer").

On October 31, 2022, the Court certified the following class:

> All California residents who purchased personal automobile, motorcycle, or RV insurance from GEICO covering any portion of the time period from March 1, 2020 to the present.

ECF No. 116 at 16–17. The class excludes "the Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors,

1    subsidiaries, and assigns" and "any judge, justice, or judicial officer presiding over this matter and

2    the members of their immediate families and judicial staff." *See id.* at 17.  In November 2022,

3    GEICO petitioned the Ninth Circuit for interlocutory review of the certification order, *see* ECF

4    No. 119; the petition was denied on February 21, 2023, *see* ECF No. 146.  On November 7, 2023,

5    the Court modified the class definition to narrow the policy coverage period from March 1, 2020

6    to the present to March 19, 2020 through July 11, 2021.  *See* ECF No. 198 at 5.

7    **II.     REQUESTS FOR JUDICIAL NOTICE AND EVIDENTIARY OBJECTIONS**

8            GEICO requests that the Court take judicial notice of CDI Bulletins, CDI press releases,

9    state and federal announcements regarding the COVID-19 pandemic, and a U.S. Department of

10   Transportation and the Federal Highway Administration report.  Mot. at 20–23.  Day did not

11   object to this request.  "The court may judicially notice a fact that is not subject to reasonable

12   dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can

13   be accurately and readily determined from sources whose accuracy cannot reasonably be

14   questioned." Fed. R. Evid. 201.  The Court may take judicial notice of public records and

15   government documents available from reliable sources, including government websites.  *See*

16   *Moreland Apartments Assocs. v. LP Equity LLC*, No. 5:19-CV-00744-EJD, 2019 WL 6771792, at

17   *3 n.3 (N.D. Cal. Dec. 12, 2019); *see also Perryman v. Litton Loan Servicing, LP*, No. 14-CV-

18   02261-JST, 2014 WL 4954674, at *3 (N.D. Cal. Oct. 1, 2014) (taking judicial notice of form and

19   premium rate filings made to and approved by the CDI).  Accordingly, GEICO's request with

20   respect to these documents is GRANTED.

21           GEICO also requests that the Court take judicial notice of various court filings in similar

22   cases concerning premium refunds in response to COVID-19.  Mot. at 20–23.  Day did not object

23   to this request.  "A court may . . . take judicial notice of the existence of another court's opinion or

24   of the filing of pleadings in related proceedings; the Court may not, however, accept as true the

25   facts found or alleged in such documents." *GemCap Lending, LLC v. Quarles & Brady, LLP*, 269

26   F.Supp.3d 1007, 1019 (C.D. Cal. 2017) (internal quotations omitted).  Accordingly, GEICO's

27   request with respect to these documents is GRANTED.  The Court takes judicial notice of these

28   court filings, but does not take judicial notice of the facts within them.

3

United States District Court
Northern District of California

1  Day objects to the January 26, 2023 email from Ken Allen of CDI to Angela Rinella of

2  GEICO, arguing that the email is irrelevant under Fed. R. Evid. 401 and risks unfair prejudice,

3  confusing the issues, and wasting time under Fed. R. Evid. 403.  Opp. at 19.  The Court finds that

4  the email is relevant to issues in this case and that such relevance is not substantially outweighed

5  by any risk of unfair prejudice, confusing issues, and wasting time.  Moreover, on summary

6  judgment the Court is unlikely to be confused or to be improperly influenced by the email.

7  Accordingly, the Court OVERRULES Day's objection.

8  GEICO objects to the October 20, 2023 declaration of Day's expert, Allan Schwartz,

9  arguing that it is a supplemental expert report that should be stricken as untimely and prejudicial

10  because it was produced after the deadline for expert discovery had passed.  Reply at 1, 12.  The

11  supplemental declaration was submitted in response to GEICO's evidence in support of its motion

12  for summary judgment.  *See* ECF No. 190-11 ("Schwartz Decl.").  Expert discovery in this case

13  closed on June 30, 2023, with any rebuttal reports due on July 28, 2023.  *See* ECF No. 149 (setting

14  expert discovery deadlines).  Federal Rule of Civil Procedure 26 provides that parties must

15  disclose expert testimony "at the times and in the sequence that the court orders."  Fed. R. Civ. P.

16  26(a)(2)(D).  Rule 37 provides that if a party fails to comply with Rule 26, "the party is not

17  allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a

18  trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

19  Because Schwartz's declaration includes expert opinion and analysis, the Court will construe the

20  declaration as a supplemental expert report.  Day disclosed the declaration after the close of expert

21  discovery and has not shown that the late admission of this declaration would be substantially

22  justified or harmless.  Accordingly, the Court STRIKES the supplemental declaration at ECF No.

23  190-11.  *See Rodman v. Safeway Inc.*, 125 F.Supp.3d 922, 938 (N.D. Cal. 2015) (striking a

24  supplemental expert report produced for the first time in opposition to a motion for summary

25  judgment and after the close of expert discovery), *aff'd*, 694 F.App'x 612 (9th Cir. 2017).

26  **III.    LEGAL STANDARD**

27  Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary

28  judgment is appropriate if the evidence and all reasonable inferences in the light most favorable to

4

United States District Court
Northern District of California

1    the nonmoving party "show that there is no genuine issue as to any material fact and that the

2    moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317,

3    322 (1986).

4         The moving party "bears the burden of showing there is no material factual dispute," *Hill*

5    *v. R+L Carriers, Inc.*, 690 F.Supp.2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the court

6    the portions of the materials on file that it believes demonstrate the absence of any genuine issue

7    of material fact." *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th

8    Cir. 1987).  In judging evidence at the summary judgment stage, the Court "does not assess

9    credibility or weigh the evidence, but simply determines whether there is a genuine factual issue

10   for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006).  A fact is "material" if it "might affect the

11   outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if

12   there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party.

13   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

14        Where the moving party does not have the burden of proof on an issue at trial, it "must

15   either produce evidence negating an essential element of the nonmoving party's claim or defense

16   or show that the nonmoving party does not have enough evidence of an essential element to carry

17   its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies,*

18   *Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party meets its initial burden, the

19   nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts

20   showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250 (internal quotation

21   marks omitted).  If the nonmoving party's "evidence is merely colorable, or is not significantly

22   probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted).  Mere

23   conclusory, speculative testimony in affidavits and moving papers is also insufficient to raise

24   genuine issues of fact and defeat summary judgment.  *See Thornhill Publ'g Co. v. GTE Corp.*, 594

25   F.2d 730, 738 (9th Cir. 1979).  For a court to find that a genuine dispute of material fact exists,

26   "there must be enough doubt for a reasonable trier of fact to find for the [non-moving party]."

27   *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009).

28

## IV.   DISCUSSION

### A.   Whether the CDI's Determination Precludes Day's Claims

GEICO argues that the CDI's determination that GEICO was not required to return any additional premium to California PPA policyholders to account for the lower risk of loss during the COVID-19 pandemic precludes Day's UCL claim.  Mot. at 7.  GEICO argues that the CDI directly addressed the sufficiency of the Giveback and that the CDI represents all California policyholders.  *Id.* at 8–9.  Day responds that GEICO has failed to demonstrate that the criteria for collateral estoppel have been met.  Opp. at 11–15.  GEICO responds that Day is judicially estopped from disclaiming reliance on CDI publications.  Reply at 4–5.

"In determining the preclusive effect of a state administrative decision or a state court judgment, [the Court] follow[s] the state's rules of preclusion."  *Chen Through Chen v. Albany Unified Sch. Dist.*, 56 F.4th 708, 725 (9th Cir. 2022) (quoting *White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012)).  California courts follow a two-part test to evaluate the preclusive effect of administrative agency determinations.  *Eilrich v. Remas*, 839 F.2d 630, 633 (9th Cir. 1988).  At the first part, collateral estoppel applies when the "administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate."  *Id.* (quoting *United States v. Utah Const. & Min. Co.*, 384 U.S. 394, 422 (1966); and citing *People v. Sims*, 32 Cal.3d 468 (1982)).  At the second part of the test, California courts examine the traditional collateral estoppel criteria, which bars relitigation of an issue if (1) the issue is identical; (2) the issue was actually litigated and necessarily decided in the previous proceeding; (3) the previous proceeding resulted in final judgment on the merits; and (4) the party against whom collateral estoppel is asserted was a party or privity with a party in the prior proceeding.  *See Chen Through Chen*, 56 F.4th at 725; *Eilrich*, 839 F.2d at 633.

The Court finds that GEICO has failed to demonstrate that the CDI determination is entitled to preclusive effect.  GEICO does not argue nor does the Court find that CDI was acting in a judicial capacity and resolved disputed issues of fact in which the parties had an adequate opportunity to litigate.  *See* Mtn. 8–10; *see also Eilrich*, 839 F.2d at 633.  Similarly, GEICO makes no argument that might show the question of whether the GEICO Giveback is unfair under

6

1   the UCL was actually litigated and necessarily decided by CDI or that CDI's determination

2   resulted in final judgment on the merits.

3          To the extent that GEICO argues that Day is judicially estopped, that argument also fails.

4   "[J]udicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" *New*

5   *Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th

6   Cir. 1990)).  "[I]ts purpose is 'to protect the integrity of the judicial process' by 'prohibiting

7   parties from deliberately changing positions according to the exigencies of the moment.'" *Id.* at

8   749–50 (cleaned up) (first quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir.

9   1982); then quoting *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993)).  In determining

10  whether judicial estoppel applies, courts typically consider the following nonexhaustive factors:

11  (1) "[A] party's later position must be 'clearly inconsistent' with its earlier position";

12  (2) "[W]hether the party has succeeded in persuading a court to accept that party's earlier position,

13  so that judicial acceptance of an inconsistent position in a later proceeding would create the

14  perception that either the first or the second court was misled"; and (3) "[W]hether the party

15  seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair

16  detriment on the opposing party if not estopped." *Ah Quin v. Cnty. of Kauai Dep't of Transp.*, 733

17  F.3d 267, 270–71 (9th Cir. 2013) (quoting *New Hampshire v. Maine*, 532 U.S. at 750–51).

18         The Court finds that Day's prior use of evidence from the CDI to bolster her positions in

19  this case does not require that she is judicially estopped from arguing the CDI's determination

20  with respect to the GEICO Giveback is not preclusive.  GEICO does not argue and the Court does

21  not find that Day's position in opposition to this motion is "clearly inconsistent" with her prior

22  positions in this case.  Nor has the Court ever ruled on the preclusive effect of a CDI

23  determination under California law.

24         Therefore, the Court will DENY GEICO's motion for summary judgment with respect to

25  preclusion by the CDI's determination.  That said, the CDI determination appears to be powerful

26  evidence that may play a significant role at trial.

27      **B.    GEICO's Net Loss**

28         GEICO argues that Day cannot prove damages because GEICO's business in California

United States District Court
Northern District of California

7

1    suffered a net loss during 2021 and beyond as a result of the pandemic.  Mot. 10–11.  Day

2    responds that GEICO points to a net underwriting loss, GEICO's calculations exclude investments

3    and other sources of income, the period for measuring relief should stop in June 2021, and

4    GEICO's losses are in part the result of its decision to wait to request rate increases.  Opp. at 22–

5    24.  GEICO responds that the period for measuring relief should extend beyond June 2021 and

6    that GEICO could not have raised its rates due to the CDI's delay in approving the previous rate.

7    Reply at 11–12.

8          The Court concludes that there are disputes of material fact that preclude summary

9    judgment on this issue.  First, the Court notes that damages are not available under the UCL.  The

10   class may be entitled to seek restitution of money unfairly paid, but not damages.  Further, for

11   example, there is a genuine dispute as to whether GEICO's losses negate the harm suffered by the

12   class.  GEICO primarily relies on an internal document summarizing GEICO's profit and loss

13   history from July 2012 to March 2023.  ECF No. 172-5 at 33–37 ("Ward Decl. Ex. E").  Russell

14   Ward, a Senior Director at GEICO, summarized the document as showing GEICO's underwriting

15   profits and losses, which represents the net result of premiums earned less claims losses.  ECF No.

16   172-5 ("Ward Decl.") ¶ 7.  The data shows that from August 2021 to March 2023, GEICO's net

17   underwriting loss was ▓▓▓▓▓▓.  *Id.* ¶ 9.  Day responded with the rebuttal report of her

18   expert, Allan Schwartz, who opines that GEICO's data omits multiple sources of income that are

19   usually considered under the California insurance law, including investment results, "Projected

20   Ancillary Income," and "Miscellaneous Fees And Other Charges."  ECF No. 189-14 ("Schwartz

21   Rebuttal Rep.") ¶¶ 66–71.  Schwartz also opines that the values reported in GEICO's evidence are

22   inconsistent with GEICO's filings with the CDI.  *See id.* ¶ 73 (noting that GEICO's document

23   shows an underwriting loss of ▓▓▓▓▓ in 2021 while GEICO's CDI filings show a net

24   underwriting gain in 2021 for a profit of $11.7 million).  Viewing this evidence in the light most

25   favorable to the nonmovant, a reasonable trier of fact could find that GEICO did not suffer a net

26   loss that negates the harm suffered by the class.  Thus, a reasonable trier of fact could find in favor

27   of Day on the question of restitution, and a dispute of material fact precludes summary judgment.

28          Additionally, there is a genuine dispute as to when and to what extent the COVID-19

8

pandemic affected GEICO's claimed losses.  GEICO faults Schwartz for concluding that the pandemic ceased to affect GEICO's insurance by June 2021, arguing that the pandemic has continued to affect the frequency of claims, which have not returned to pre-pandemic levels, while the severity of claims has continued to increase since the end of 2020.  ECF No. 171-1 ("Vocke Decl. Ex. J") at 148 (Ward testifying in a deposition that "[f]requencies [sic] still hasn't returned to pre-pandemic level.  Severities have way more than escalated past pre-pandemic levels.").  Day responds by pointing to Schwartz's June 9, 2023 declaration, which opines that the effects of the COVID-19 pandemic on GEICO's claimed losses dissipated in June 2021 because in that month, GEICO's claim counts were within 10% of 2019 values, GEICO's loss ratios had returned to pre-pandemic levels, and GEICO's rate filing data showed that the ratio of actual losses to projected losses was within 5% of pre-pandemic levels.  *See* ECF No. 171-1 ("Schwartz June 9, 2023 Decl.") at ¶¶ 9–12.  Construing, as the Court must, these facts in the light most favorable to the nonmoving party, the Court finds that a reasonable trier of fact could conclude that the effects of the COVID-19 pandemic on GEICO's vehicle insurance losses dissipated by June 2021.  If this is true, then a reasonable factfinder could conclude that despite GEICO's underwriting losses post-June 2021, GEICO still received a windfall as a result of the pandemic that it inadequately refunded to the class.  Thus, a reasonable trier of fact could find in favor of Day on damages.

In light of these disputes of material fact, the Court DENIES GEICO's motion with respect to its argument that its net underwriting loss negates all "damages."

**C.    Whether the Giveback Is an Unfair Practice Under the UCL**

GEICO argues that it is entitled to summary judgment because it did not participate in an unfair practice in violation of the UCL.  Mot. at 11–12.  GEICO seems to suggest that the UCL requires an intentional "scheme to defraud."  Mot. at 11; *see also* Reply at 2 (suggesting that a UCL claim requires scienter).  As a result, GEICO argues that there is no evidence that it gave false or incorrect information regarding the GEICO Giveback or that it acted with ill intent.  Mot. at 13.  GEICO also argues that it should not be punished for "excessive profits" and that other courts have rejected similar UCL claims against insurers.  *Id.* at 13–15.  Day responds that this Court and others have denied motions to dismiss claims that similar insurance practices during the

United States District Court
Northern District of California

1  COVID-19 pandemic violated the UCL.  *See* Opp. at 17.  Day also argues that discovery has
2  confirmed her allegations of unfair conduct.  *Id.* at 18–22.

3          As an initial matter, the Court notes that GEICO's arguments are untethered to the legal
4  standards governing a UCL unfair claim.  The unfair prong of the UCL "creates a cause of action
5  for a business practice that is unfair even if not proscribed by some other law."  *Cappello v.*
6  *Walmart Inc.*, 394 F.Supp.3d 1015, 1023 (N.D. Cal. 2019).  While the definition of "unfair" is "in
7  flux," California courts have coalesced around two tests.  *See Lozano v. AT & T Wireless Servs.*,
8  Inc., 504 F.3d 718, 736 (9th Cir. 2007).  Some courts apply a balancing test in which the court
9  "weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged
10  victim."  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).  Others apply
11  the "tethering test," which asks whether the unfair act is "tethered to some legislatively declared
12  policy" or whether there is "proof of some actual or threatened impact on competition."  *Lozano*,
13  504 F.3d at 735.

14          Rather than arguing under either test, GEICO argues that it did not engage in "intentional
15  deceit in a 'scheme to defraud.'"  Mot. at 13.  However, a claim under the UCL does not usually
16  require intent.  *See Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal.App.4th 1105, 1133
17  (2014), *as modified on denial of reh'g* (Feb. 27, 2014) ("Traditional fraud requirements, such as
18  intent or actual reliance, are inapplicable to the UCL.");  *Paulus v. Bob Lynch Ford, Inc.*, 139
19  Cal.App.4th 659, 678 (2006) ("[A] UCL plaintiff ordinarily need not show defendant's intent to
20  injure or harm: 'The UCL imposes strict liability when property or monetary losses are occasioned
21  by conduct that constitutes an unfair business practice.'" (quoting *Cortez v. Purolator Air*
22  *Filtration Products Co.*, 23 Cal.4th 163, 181 (2000))).  Moreover, GEICO's suggestion that a
23  UCL unfair claim is limited to a "scheme to defraud" is contrary to the UCL's sweeping language,
24  which is intended "to permit tribunals to enjoin on-going wrongful business conduct in whatever
25  context such activity might occur."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20
26  Cal.4th 163, 181 (1999) (quoting *Am. Philatelic Soc. v. Claibourne*, 3 Cal.2d 689, 698 (1935)).
27  As a result of GEICO's failure to raise arguments under the correct legal standard, GEICO has
28  failed to meet its initial burden to "either produce evidence negating an essential element of the

10

1   nonmoving party's claim or defense or show that the nonmoving party does not have enough

2   evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire*,

3   210 F.3d at 1102.

4         Because GEICO has failed to meet its initial burden, the Court DENIES GEICO's motion

5   with respect to its argument that the GEICO Giveback is not an unfair practice under the UCL.

6   Although GEICO has not adequately addressed the standard for addressing UCL unfair claim, the

7   Court observes that GEICO has cited a reasoned decision from the Superior Court of California,

8   Los Angeles County, that appears to provide a persuasive framework for considering these claims.

9   *See Shively v. Wawanesa General Ins. Co.*, No. 22STCV06011, 2023 WL 5509069 (Cal. Super.

10   Aug. 22, 2023).  Therefore, the Court will allow a further motion for summary judgment to

11   address the narrow issues of the UCL safe harbor provision and analysis of this case under the

12   correct legal standards for a UCL unfair claim.

13         **D.**    **Whether Restitution Can Be Awarded**

14         GEICO argues that Day fails to establish the requirements for restitution in a UCL claim

15   because GEICO "did not 'obtain something to which it was not entitled.'"  Mot. at 15–16.  GEICO

16   argues that, because its insurance rates during the pandemic were approved by the CDI, it was

17   entitled to collect on that rate.  *Id.* at 16.  Day responds that the class is entitled to restitution

18   because the class was overcharged by "GEICO's unfair practice of charging pre-pandemic rates

19   during the changed circumstances of the pandemic."  Opp. at 21.  Day also argues that GEICO's

20   argument is an attempt to relitigate its jurisdictional arguments.  *Id.*

21         "Restitution under section 17203 is confined to restoration of any interest in 'money or

22   property, real or personal, which may have been *acquired* by means of such unfair competition.'"

23   *Kwikset Corp. v. Superior Ct.*, 51 Cal.4th 310, 336 (2011) (emphasis in original) (quoting Cal.

24   Bus. & Prof. Code § 17203).  "[W]ith restitution, a defendant is asked to return something the

25   defendant wrongfully received; the defendant is not asked to compensate the plaintiff for injury

26   suffered as a result of the defendant's conduct."  *M&F Fishing, Inc. v. Sea-Pac Ins. Managers,*

27   *Inc.*, 202 Cal.App.4th 1509, 1528 (2012) (cleaned up) (quoting *Bank of the W. v. Superior Ct.*, 2

28   Cal.4th 1254, 1268 (1992)).

United States District Court
Northern District of California

United States District Court
Northern District of California

1       GEICO argues that it did not "wrongfully receive" class members' insurance premiums

2   because it charged an approved rate.  However, GEICO fails to point the Court to any authority

3   defining "wrongfully received."  Indeed, whether a benefit is wrongfully received for purposes of

4   the UCL appears to turn on whether the benefit was received by means of an unfair business

5   practice.  *See Bank of the W. v. Superior Ct.*, 2 Cal.4th 1254, 1266 (1992) ("The only nonpunitive

6   monetary relief available under the [UCL] is the disgorgement of money that has been wrongfully

7   obtained or, in the language of the statute, an order 'restor[ing] . . . money . . . which may have

8   been acquired by means of . . . unfair competition.'" (quoting *Chern v. Bank of Am.*, 15 Cal.3d

9   866, 875 (1976))).  Thus, GEICO's argument with respect to restitution fails for the same reasons

10  as its argument that its practices were not unfair.  As above, GEICO has failed to argue that its

11  practices were not unfair under the correct legal standard, so it has failed to meet its initial burden

12  to "either produce evidence negating an essential element of the nonmoving party's claim or

13  defense or show that the nonmoving party does not have enough evidence of an essential element

14  to carry its ultimate burden of persuasion at trial."  *Nissan Fire*, 210 F.3d at 1102.

15      Therefore, the Court DENIES GEICO's motion with respect to its argument that Day

16  cannot claim restitution.

17      **E.      Whether Extending the UCL to GEICO's "Excess Profits" Is Unconstitutional**

18      GEICO argues that finding liability under the UCL would violate the Takings and Due

19  Process Clauses of the United States Constitution.  Mot. at 16–18.  Day argues that GEICO's

20  argument is a repackaging of its abstention and exclusive jurisdiction arguments, which the Court

21  already rejected.  Opp. at 25.

22      GEICO primarily relies on *20th Century Ins. Co. v. Garamendi*, 8 Cal.4th 216 (1994),

23  which addressed whether a rate rollback under California Proposition 103 was constitutional.  *See*

24  8 Cal.4th at 242.  GEICO quotes *Garamendi* for the proposition that "[t]he crucial question under

25  the takings clause is whether the rate set is just and reasonable.  If it is not just and reasonable, it is

26  confiscatory.  If it is confiscatory, it is invalid."  *Id.* at 292 (citations omitted).  The California

27  Supreme Court continued that "the only circumstances under which there is a possibility of a

28  taking of investors' property by virtue of rate regulation is when a [regulated firm] is in . . . deep

financial hardship. . . . But absent the sort of deep financial hardship described in *Hope*, . . . there is no taking." *Id.* at 296 (quotations omitted) (quoting *Jersey Cent. Power & Light Co. v. FERC*, 810 F.2d 1168, 1181 (D.C. Cir. 1987)).  GEICO argues that it would be in deep financial hardship because it has run a net loss since the start of the pandemic.  Mot. at 18.  However, as noted above, the Court finds that there are disputes of material fact regarding whether GEICO ran at a net loss that preclude summary judgment.

Therefore, the Court DENIES GEICO's motion with respect to its argument that finding liability under the UCL in this case would be unconstitutional.

## V.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants GEICO Casualty Company, GEICO Indemnity Company, and GEICO General Insurance Company's Motion for Summary Judgment (ECF No. 171) is DENIED.  This denial does not resolve any issues in this case.

Dated:  January 17, 2024

_____
BETH LABSON FREEMAN
United States District Judge