UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JESSICA DAY,<br><br>        Plaintiff,<br><br>    v.<br><br>GEICO CASUALTY COMPANY, et al.,<br><br>        Defendants. | Case No. 21-cv-02103-BLF<br><br>**ORDER GRANTING RENEWED MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF No. 220] |

Defendants GEICO Casualty Company, GEICO Indemnity Company, and GEICO General Insurance Company (collectively, "GEICO") have, at the Court's invitation, filed a renewed motion for summary judgment. ECF No. 220 ("Mot."). Plaintiff Jessica Day opposes the motion. ECF No. 224 ("Opp."). GEICO filed a reply. ECF No. 227 ("Reply"). The Court finds the motion suitable for decision without oral argument. *See* Civ. L.R. 7-1(b); ECF No. 215.

For the reasons below, the Court GRANTS summary judgment in favor of GEICO on Plaintiff's California Unfair Competition Law ("UCL") "unfair" claim.

I.  **BACKGROUND**[1]

    A.  **The COVID-19 Pandemic and the GEICO Giveback**

In March 2020, the State of California recognized the public health crisis caused by the COVID-19 pandemic. The pandemic and California's "stay at home" orders reduced the amount of traffic on California roads, which in turn reduced the frequency of automobile and motorcycle

---

[1] The following facts are based on evidence submitted in support of the briefing on GEICO's initial motion for summary judgment. *See* ECF Nos. 171, 190. The Court granted GEICO's request for judicial notice of various state and federal bulletins and reports and court filings in similar cases concerning premium refunds in response to COVID-19. *See* ECF No. 219. The Court finds it appropriate to take judicial notice of these documents in ruling on GEICO's renewed motion for summary judgment.

accidents and insurance claims. *See* ECF No. 172-4 ("Vocke Decl. Ex. W") ¶¶ 21–24; ECF No. 172-5 ("Ward Decl. Ex. J") at 57 (noting that the COVID-19 pandemic caused a decrease in the frequency of insurance claims).

On April 7, 2020, GEICO announced the "GEICO Giveback, a program that provided a 15% credit on all 6-month personal automobile and RV policies sold or renewed from April 8, 2020 to October 8, 2020 and all 12-month motorcycle policies sold or renewed from April 8, 2020 to April 7, 2021." ECF No. 189-6 ("Schug Decl. Ex. 1") at 7 (the deposition of GEICO's Rule 30(b)(6) witness testifying to the announcement of the GEICO Giveback); *see also* ECF No. 190-5 ("Schug Decl. Ex. 4") (a GEICO memorandum filed with state insurance departments explaining the terms of the GEICO Giveback); ECF No. 172-4 ("Vocke Decl. Ex. EE") at 463–64 (dating the GEICO Giveback announcement on April 7, 2020). At the California Department of Insurance's ("CDI") request, GEICO extended the Giveback to policyholders who did not renew their policies during the Giveback period. *See* Schug Decl. Ex. 1 at 63–65 (Russel Ward's deposition, in which he testified to extension of the Giveback); ECF No. 190-12 ("Schug Decl. Ex. 11") (email from Ken Allen of CDI discussing extension of the Giveback). █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

### B. CDI Bulletins

On April 13, 2020, a few days after GEICO announced the Giveback, CDI issued the first of several Bulletins addressing premium relief to California policyholders in light of the COVID-19 pandemic and "stay at home" orders. *See* ECF No. 171-1 ("Vocke Decl. Ex. C") at 17–29. The first Bulletin ordered "insurers to make an initial premium refund for the months of March and April to all adversely impacted California policyholders in the following lines of insurance [including private passenger automobile insurance] . . . ." *Id.* at 17–18. The Bulletin stated that premium relief was ordered "[t]o protect consumers and to provide consistent direction to the

2

insurance industry regarding misclassifications of risk resulting from the COVID-19 pandemic and to address certain issues raised in CFC's petition." *Id.* The Bulletin granted "each insurer reasonable flexibility in determining how best to quickly and fairly accomplish the refund of premium to policyholders." *Id.* at 18. Finally, the Bulletin ordered insurers to report to the CDI "all actions taken and contemplated future actions to refund premium in response to or consistent with this Bulletin." *Id.* at 19.

The May 15, 2020 Bulletin extended the directives of the first Bulletin through May 31, 2020. Vocke Decl. Ex. C at 21. The December 3, 2020 Bulletin extended the directives of the first Bulletin through June 2020 and "to any months subsequent to June because the COVID-19 pandemic continues to result in projected loss exposures remaining overstated or misclassified." *Id.* at 23. The March 21, 2021 Bulletin acknowledged that some insurance companies "made a good faith effort to return premium to policyholders, some did not return enough." *Id.* at 27. The March 21, 2021 Bulletin ordered insurers to "do more to return overstated private passenger automobile premiums, and continue to do so as long as the pandemic results in reduced risk of loss." *Id.* at 28. It also ordered insurers to continue providing premium relief information to CDI on a quarterly basis. *Id.*

On September 29, 2022, CDI issued a final order on Bulletin compliance, in which it ordered insurers, including GEICO, to produce further data on their premium refunds "in order to determine whether a full examination or other administrative action is necessary." ECF No. 171-2 ("Ward Decl. Ex. A") at 7–8.

**C.     CDI's Determination with Respect to the GEICO Giveback**

In order to comply with CDI Bulletins, GEICO regularly reported its data to CDI. ECF No. 171-2 ("Ward Decl. Ex. C") at 19–25 (emails transmitting GEICO's reports and data on Bulletin compliance to CDI); ECF No. 171-2 ("Ward Decl. Ex. I") at 51–53 (GEICO letter responding to CDI's September 29, 2022 final order on Bulletin compliance by producing more data); ECF No. 172-4 ("Vocke Decl. Ex. J") at 151 (Ward testifying to GEICO's submission of quarterly workbooks to CDI with regard to the Giveback).

Throughout the COVID-19 pandemic, CDI used information reported by GEICO and other

insurers to assess the adequacy of insurers' premium relief and whether to order insurers to issue further relief. For example, in October 2021, CDI analyzed data that it received from auto insurance companies and ordered Allstate, Mercury, and CSAA to reimburse excess premiums charged from the start of the pandemic or face legal action. *See* ECF No. 172-4 ("Vocke Decl. Ex. F") at 102–03 (CDI press release). Following the September 29, 2022 final order on Bulletin compliance, CDI determined that certain insurers should provide greater premium relief. *See* ECF No. 172-4 ("Vocke Decl. Ex. G") at 106–08 (settlement stipulation between CDI and Mercury Insurance Company and California Automobile Insurance Company, under which the insurers were to refund or credit an aggregate amount of $25 million); ECF No. 172-4 ("Vocke Decl. Ex. H") at 113–19 (settlement stipulation between CDI and Farmers Insurance Exchange and Mid-Century Insurance Company, under which the insurers were ordered to refund or credit an aggregate amount of almost $14.5 million).

During a November 2022 Zoom meeting, CDI officials told GEICO officials that, after reviewing the data that GEICO provided, CDI found GEICO's COVID-19 refunds were sufficient. *See* ECF No. 189-6 ("Schug Decl. Ex. 1") at 23–26 (Angela Rinella of GEICO testifying in a deposition about the November 2022 meeting); *id.* at 92–94 (Ward's deposition testimony describing the November 2022 meeting). Several months later, GEICO requested that CDI provide confirmation of its finding in writing. *See id.* at 23. On January 26, 2023, Ken Allen, Deputy Commissioner of CDI's Rate Regulation Branch, emailed Rinella, stating:

> [B]ased on the data and other information submitted to the Department by [GEICO], the PPA premium previously returned to its California PPA policyholders under the Giveback Program, and the methodology utilized by the Department to calculate whether insurers returned a sufficient amount of PPA premium to account for the lower risk of loss during the COVID pandemic period, the Department has determined that GEICO is not required to return any additional premium to its California PPA policyholders.

ECF No. 171-2 ("Ward Decl. Ex. D") at 27–32. The Rate Regulation Branch "review[s] and analyze[s] the rate filings submitted for prior approval under Proposition 103 by insurance companies . . . [and] was responsible for assessing insurer's compliance with the bulletins relating to premium relief due to the pandemic." ECF No. 171-1 ("Vocke Deck. Ex. FF") at 475 (a

4

California Deputy Attorney General's declaration describing CDI's Rate Regulation Branch and its role with respect to the Bulletins).

### D. Procedural History

On March 25, 2021, Plaintiff filed this action on behalf of a putative class asserting causes of action for breach of contract, unjust enrichment, frustration of purpose, California's False Advertising Law, and California's Unfair Competition Law. *See* ECF No. 1 ("Compl."). Following the Court's order granting in part with leave to amend and denying in part GEICO's motion to dismiss, *see* ECF No. 64, Plaintiff filed an amended complaint in February 2022, bringing claims for breach of contract and violation of the UCL under the "unfair" prong. *See* ECF No. 68 ("Am. Compl."). On June 14, 2022, the Court granted GEICO's motion to dismiss Plaintiff's breach of contract claim. *See* ECF No. 87. Thus, only Plaintiff's UCL unfair claim remains. GEICO answered the Amended Complaint in July 2022. *See* ECF No. 89 ("Answer").

On October 31, 2022, the Court certified the following class:

> All California residents who purchased personal automobile, motorcycle, or RV insurance from GEICO covering any portion of the time period from March 1, 2020 to the present.

ECF No. 116 at 16–17. The class excludes "the Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns" and "any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff." *See id.* at 17. In November 2022, GEICO petitioned the Ninth Circuit for interlocutory review of the certification order, *see* ECF No. 119; the petition was denied on February 21, 2023, *see* ECF No. 146. On November 7, 2023, the Court modified the class definition to narrow the policy coverage period from March 1, 2020 to the present to March 19, 2020 through July 11, 2021. *See* ECF No. 198 at 5.

On January 17, 2024, the Court denied GEICO's motion for summary judgment. *See* ECF Nos. 214 (sealed order); 219 (redacted order). The same day, the Court invited GEICO to file a renewed motion for summary judgment that addresses whether a "safe harbor" shields GEICO from suit and whether GEICO is entitled to summary judgment under the balancing or tethering

1  tests. *See* ECF No. 215.  That motion is now before the Court.

2  **II.     LEGAL STANDARD**

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary judgment is appropriate if the evidence and all reasonable inferences in the light most favorable to the nonmoving party "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party "bears the burden of showing there is no material factual dispute," *Hill v. R+L Carriers, Inc.*, 690 F.Supp.2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  In judging evidence at the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where the moving party does not have the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250 (internal quotation marks omitted).  If the nonmoving party's "evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted).  Mere conclusory, speculative testimony in affidavits and moving papers is also insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. GTE Corp.*, 594

1  F.2d 730, 738 (9th Cir. 1979). For a court to find that a genuine dispute of material fact exists,

2  "there must be enough doubt for a reasonable trier of fact to find for the [non-moving party]."

3  *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009).

### III. DISCUSSION

GEICO raises three arguments in its renewed motion: (1) that a safe harbor shields GEICO from Plaintiff's UCL unfair claim; (2) that, as a matter of law, neither the tethering nor balancing tests are satisfied; and (3) that the Court should reconsider its prior ruling denying summary judgment because it relied on a stricken rebuttal report. The Court addresses the first two arguments in turn.[2]

#### A. Evidentiary Objections

Before proceeding to the merits, the Court addresses Plaintiff's evidentiary objections. Plaintiff argues that the email from Deputy Commissioner Allen to Rinella, which determined that GEICO was not required to return any additional premium to PPA policyholders, is inadmissible. Opp. at 10; *see also* Ward Decl. Ex. D at 27–32 (the authenticated email from Allen to Rinella). Plaintiff argues that the email is hearsay and improper expert testimony. *See id.*

Plaintiff's objections are OVERRULED. Where, as here, the contents of a document can be presented in a form that would be admissible at trial, hearsay alone is not a basis for the Court to refuse to consider evidence on summary judgment. *See Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021) ("If the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment."). Additionally, the email is not being offered as expert opinion, so it is not improper expert testimony.

#### B. UCL Safe Harbor

Although the UCL's "scope is sweeping, . . . [c]ourts may not simply impose their own

---

[2] In its reply brief, GEICO acknowledged that it was mistaken regarding the expert report on which the Court relied and abandoned its argument for reconsideration. *See* Reply at 5. Thus, the Court need not address GEICO's third argument.

7

notions of the day as to what is fair or unfair." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 182 (1999). "When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Id.* Generally, legislation provides a safe harbor if (1) "the Legislature has permitted certain conduct" or (2) "the Legislature has . . . considered a situation and concluded no action should lie." *Id.* "To forestall an action under the unfair competition law, another provision must actually 'bar' the action or clearly permit the conduct." *Id.* at 183.

GEICO argues that a safe harbor shields it from Plaintiff's UCL unfair claim on two bases: First, GEICO argues that the California Insurance Code requires GEICO to use a rate approved by the California Insurance Commissioner, and that use of a rate previously approved is an act that the electorate has determined to be lawful for purposes of the safe harbor. *See* Mot. at 3–4 (citing *Shively v. Wawanesa General Ins. Co.*, No. 22STCV06011, 2023 WL 5509069, at *4 (Cal. Super. Aug. 22, 2023)). Second, GEICO argues that provisions of the Insurance Code that state an insured is not entitled to return of premiums once a risk has attached serve as a safe harbor. *See id.* at 5. Plaintiff responds that the Court has already rejected GEICO's argument in ruling against GEICO on its motion to dismiss, in certifying the class, and in declining to abstain from exercising jurisdiction. Opp. at 1–2. Plaintiff also argues that GEICO failed to plead the safe harbor as an affirmative defense in its answer. *Id.* at 2–3. On the merits of the safe harbor, Plaintiff argues that the safe harbor does not apply because Plaintiff's challenge is not to approved rates and rating factors, but the application of approved rates. *Id.* at 4–6. GEICO replies that there is no carve-out for "misapplication" in the statutory safe harbor and Plaintiff is not prejudiced by consideration of the safe harbor. *See* Reply at 1–3.

The Court concludes that none of the statutory provisions identified by GEICO provides a safe harbor against the UCL claims in this case. The Court first addresses the prior-approval provision, which states that "insurance rates subject to this chapter must be approved by the commissioner prior to their use." Cal. Ins. Code § 1861.01(c). From this language, the *Shively* court concluded that, "an insurance company's use of an insurance rate that the Commissioner has approved is an act that the electorate has determined to be lawful." *Shively*, 2023 WL 5509069, at

8

\*4. However, in this case, the Court previously found and continuously reaffirmed that Plaintiff is challenging the *application* of approved rates rather than approved rates and rating factors. *See* ECF No. 64 at 7 ("Plaintiff is not challenging 'approved rates and rating factors,' but instead 'the application of approved rates.'"); ECF No. 130 ("Plaintiff is seeking a partial refund for class members, not for the Court to set new rates."); ECF No. 185 ("Plaintiff's claim challenges GEICO's application of its approved rate plan during the COVID-19 pandemic."). This prior holding is important because it distinguishes this case from the reasoning of *Shively*. If the Commissioner does not approve how an insurance company applies approved rates, then there can be no safe harbor under the prior-approval provision. In fact, the prior-approval provision does not address the application of approved rates. Thus, GEICO has failed to meet its burden to show that the prior-approval provision "expressly prohibit[s] liability for the defendant's acts or omissions" or "expressly precludes an action based on the conduct." *Klein v. Chevron U.S.A., Inc.*, 202 Cal.App.4th 1342, 1379 (2012), *as modified on denial of reh'g* (Feb. 24, 2012) (alteration in original) (citation omitted) (first quoting *Krumme v. Mercury Ins. Co.*, 123 Cal.App.4th 924, 940 n.5 (2004); then quoting *Chavez v. Whirlpool Corp.*, 93 Cal.App.4th 363, 374 (2001)). Other district courts addressing similar safe harbor arguments in the context of similar claims have found that no safe harbor applies because the prior-approval provision does not preclude a suit based on the application of approved rates. *See, e.g.*, *Boobuli's LLC v. State Farm Gen. Ins. Co.*, No. 20-CV-07074-WHO, 2024 WL 269147, at \*11 n.11 (N.D. Cal. Jan. 24, 2024); *Echo & Rig Sacramento, LLC v. AmGuard Ins. Co.*, No. 223CV00197DJCJDP, 2023 WL 6927314, at \*4 (E.D. Cal. Oct. 18, 2023).

GEICO does not explicitly request that the Court reconsider its prior holding, but instead suggests that the Court should reject the "misapplication of rate" theory on the factual record before the Court. *See* Reply at 4 (citing *Boobuli's LLC*, 2024 WL 269147). GEICO relies on *Boobuli's*, a case that the Court finds distinguishable. In *Boobuli's*, Judge Orrick originally found that the plaintiff challenged only the application of approved rates. *Boobuli's LLC v. State Farm Fire & Cas. Co.*, 562 F.Supp.3d 469, 477–84 (N.D. Cal. 2021). However, on summary judgment, Judge Orrick found that the plaintiff's theory in its briefing "veer[ed] into challenging the

9

1  ratemaking process" and found that to the extent the plaintiff made such challenges, Judge Orrick
2  had no jurisdiction to review them. *Boobuli's LLC*, No. 2024 WL 269147 at *6. Unlike in
3  *Boobuli's*, Plaintiff has not veered into challenging the ratemaking process, and GEICO fails to
4  point the Court to any facts that might have changed from the pleadings to summary judgment.

5  The Court next addresses California Insurance Code §§ 480 and 482. Section 480 states
6  that "[a]n insurer is entitled to payment of the premium as soon as the subject matter insured is
7  exposed to the peril insured against." Cal. Ins. Code § 480. Section 482 states that "if a peril
8  insured against has existed, and the insurer has been liable for any period, however short, the
9  insured is not entitled to return of premiums, so far as that particular risk is concerned." Cal. Ins.
10 Code § 482. However, neither provision expressly prohibits liability for nor expressly precludes
11 an action based on an allegation that an insurer misapplied approved rates. *See Klein*, 202
12 Cal.App.4th at 1379. Thus, GEICO has not met its burden to show that either provision creates a
13 safe harbor that shields it from liability.

14 Accordingly, the Court DENIES GEICO's motion with respect to its argument that the
15 UCL safe harbor applies to this case.

16 **C. UCL Unfair Claim**

17 The UCL prohibits three types of business acts or practices: (1) unlawful, (2) unfair, and
18 (3) fraudulent. *See* Cal. Bus. & Prof. Code § 17200. At issue here is the unfair prong, which
19 "creates a cause of action for a business practice that is unfair even if not proscribed by some other
20 law." *Cappello v. Walmart Inc.*, 394 F.Supp.3d 1015, 1023 (N.D. Cal. 2019). Put differently, the
21 Court must determine whether the challenged conduct is "unfair" within the meaning of the UCL.
22 "In doing so, courts may not apply purely subjective notions of fairness." *Cel-Tech*, 20 Cal.4th at
23 184. Although the California Supreme Court has defined "unfair" in actions by competitors
24 alleging anti-competitive practices, California Courts of Appeal are divided with respect to the
25 appropriate definition of "unfair" in consumer actions such as this one. *See Bardin v.*
26 *DaimlerChrysler Corp.*, 136 Cal.App.4th 1255, 1264 (2006) (collecting cases); *see also Cel-Tech*,
27 20 Cal.4th at 187 (adopting the "tethering" test in competitor actions). California Courts of
28 Appeal have used three different approaches to defining unfair: (1) the pre-*Cel-Tech* "balancing

10

test"; (1) the "tethering test"; and (3) the three-pronged test of the Federal Trade Commission Act. *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007). In consumer cases, the Ninth Circuit has declined to apply the FTC standard absent a clear holding from the California Supreme Court, but it has approved the use of either the balancing or tethering tests. *See id.*; *Kaar v. Wells Fargo Bank, N.A.*, No. C 16-01290 WHA, 2016 WL 3068396, at *2 (N.D. Cal. June 1, 2016).

GEICO argues that, while the Court may use either the tethering test or the balancing test, the Court should apply the tethering test because the Court is faced with a detailed and comprehensive statutory framework. Mot. at 6. Plaintiff does not take a position on which test should apply in her opposition. The Court finds that under either the tethering or balancing test, there are no genuine disputes of material fact and GEICO is entitled to judgment as a matter of law.[3]

### i. Tethering Test

The tethering test requires that unfairness "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Cel-Tech*, 20 Cal.4th at 186–87. Under this test, the word "unfair" means "conduct that threatens an incipient violation of a[] . . . law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Id.* at 187.

GEICO argues that Plaintiff's UCL unfair claim fails as a matter of law under this test because GEICO's conduct does not violate the policy or spirit of the Insurance Code. *See* Mot. at 7–8; Reply at 3. GEICO points in particular to CDI's determination that GEICO complied with the CDI Bulletins and was not required to return additional premiums to policyholders. *See* Reply at 3. Plaintiff responds that Proposition 103 and CDI's Bulletins identified the relevant public policy as protecting consumers and ensuring that insurance, during the pandemic or otherwise, is fair, available, and affordable. *See* Opp. at 7 (quoting 1988 Cal. Legis. Serv. Prop. 103 §§ 1–2;

---

[3] Because the Court finds that GEICO is entitled to summary judgment under either test, the Court will not address GEICO's argument that the tethering test is preferable to the balancing test.

11

1  Vocke Decl. Ex. C at 17–18 (April 13, 2020 Bulletin)). Based on this public policy, Plaintiff
2  argues that this Court and other courts have found that similar UCL unfair claims survived
3  motions to dismiss. *See id.* at 8. Plaintiff also argues that genuine disputes of material fact
4  preclude summary judgment, including whether the effects of the pandemic dissipated by June
5  2021 and whether GEICO received a windfall despite its underwriting losses. *Id.* at 8–9. Finally,
6  Plaintiff argues that the email from Deputy Commissioner Allen to GEICO is unreliable because it
7  does not detail CDI's analysis. *See id.* at 9–10.

8  The Court first finds that Plaintiff's UCL unfair theory implicates a legislatively declared
9  policy. GEICO is correct that its conduct did not violate any provision of the Insurance Code.
10  Mot at 7–8. Plaintiff does not contest this assertion, and instead argues that her UCL unfair theory
11  is that GEICO's conduct violates the policy or spirit of the Insurance Code because the effects of
12  GEICO's conduct are comparable to or the same as a violation of the Insurance Code. *See* Opp. at
13  7. The legislatively declared policy at issue in this case is described in California Proposition 103,
14  which was approved by voters in November 1988 and made "numerous fundamental changes in
15  the regulation of automobile and other types of insurance." *State Farm Gen. Ins. Co. v. Lara*, 71
16  Cal.App.5th 148, 159 (2021), *as modified on denial of reh'g* (Nov. 16, 2021) (quoting *Calfarm
17  Ins. Co. v. Deukmejian*, 48 Cal.3d 805, 812 (1989)). Proposition 103 acknowledged that "existing
18  laws inadequately protect consumers and allow insurance companies to charge excessive,
19  unjustified and arbitrary rates." 1988 Cal. Legis. Serv. Prop. 103 § 1. It also stated that "[t]he
20  purpose of this chapter is to protect consumers from arbitrary insurance rates and practices, to
21  engage in a competitive insurance marketplace, to provide for an accountable Insurance
22  Commissioner, and to ensure that insurance is fair, available, and affordable for all Californians."
23  *Id.* § 2. Thus, the Court must consider whether GEICO's conduct violates Proposition 103's
24  policy of protecting consumers and ensuring that insurance is fair, available, and affordable.

25  The Court next finds that GEICO has met it initial burden to produce evidence negating an
26  essential element of Plaintiff's UCL unfair claim. *Nissan Fire & Marine*, 210 F.3d at 1102.
27  GEICO has pointed the Court to strong evidence showing that the Giveback was consistent with
28  the policy captured by the Insurance Code, including the CDI's determination that the Giveback

12

returned sufficient amounts of premiums to policyholders and GEICO was not required to return any additional premiums. *See* Ward Decl. Ex. D at 27–32. Notably, this determination was made after CDI reviewed data provided by GEICO, which GEICO had regularly been reporting during the COVID-19 pandemic. *See, e.g.*, Ward Decl. Ex. C at 19–25 (emails transmitting GEICO's reports and data on Bulletin compliance to CDI); Ward Decl. Ex. I at 51–53 (providing data in response to the September 29, 2022 final order on Bulletin compliance). CDI analyzed GEICO's data with "the methodology utilized by the Department to calculate whether insurers returned a sufficient amount of PPA premium to account for the lower risk of loss during the COVID pandemic period." Ward Decl. Ex. D at 27–32; *see also* Vocke Deck. Ex. FF at 475 (California AG noting that the Rate Regulation Branch, which reviewed GEICO's data, "review[s] and analyze[s] the rate filings submitted for prior approval under Proposition 103 by insurance companies . . . [and] was responsible for assessing insurer's compliance with the bulletins relating to premium relief due to the pandemic"). CDI's core mission is consumer protection, and CDI uses its regulatory authority over the insurance industry to "protect Californians from insurance rates that are excessive, inadequate, or unfairly discriminatory." *See* ECF No. 171-1 ("Vocke Decl. Ex. X") at 403 (CDI website describing its history and purpose). Consistent with this purpose, the CDI Bulletins issued during the COVID-19 pandemic stated repeatedly that the ordered premium relief was "[t]o protect consumers and to provide consistent direction to the insurance industry regarding misclassifications of risk resulting from the COVID-19 pandemic and to address certain issues raised in CFC's petition." Vocke Decl. Ex. C at 17–18, 20. Finally, the September 29, 2022 final order on Bulletin compliance acknowledged that "[c]onsumer protection is the top priority for California Insurance Commissioner Ricardo Lara." Ward Decl. Ex. A at 7.

Plaintiff argues that CDI's determination is not dispositive because the email from Deputy Commissioner Allen did not detail CDI's analysis and methodologies. Opp. at 9–10. However, the fact that CDI did not include analysis or detail methodologies in its email does not lead to a reasonable conclusion that CDI's determination was unreliable, especially where CDI noted that it analyzed GEICO's data using its methodology. Ward Decl. Ex. D at 27–32; *see also* Vocke Decl.

1    Ex. FF at 489 (California Deputy AG stating that "[t]he [Rate Regulation Branch] was responsible
2    for assessing insurer's compliance with the bulletins relating to premium relief due to the
3    pandemic. Insurers including GEICO provided data between 2020 to 2023 in response to the
4    Commissioner's requests which was reviewed by actuaries at RRB."). When all reasonable
5    inferences are drawn in Plaintiff's favor, the import of these facts is that GEICO's conduct does
6    not violate the policy or spirit of the Insurance Code. CDI is the California regulatory agency
7    tasked with effectuating the very policy on which Plaintiff's UCL theory is based. Consistent with
8    this policy, CDI promulgated several Bulletins during the COVID-19 pandemic directing insurers
9    to return premiums to policyholders and to report their efforts to do so to CDI. CDI then reviewed
10   that information and determined the Giveback was sufficient under the directives of the Bulletins.
11   Moreover, CDI's determination was not a rubber stamp—on several occasions, CDI ordered
12   insurers to provide even greater premium relief. *See, e.g.*, Vocke Decl. Ex. F at 102–03 (October
13   2021 CDI press release regarding CDI's order that three insurers return excess premiums); Vocke
14   Decl. Ex. G at 106–08 (settlement stipulation ordering an insurer to return ever greater premium
15   amounts); Vocke Decl. Ex. H at 113–19 (similar). Thus, in determining that GEICO was not
16   required to return any additional premiums, CDI also determined that the Giveback was consistent
17   with the policy of the Insurance Code that CDI sought to effectuate in the Bulletins.

18         The Court pauses to acknowledge that it has analyzed the import of the CDI determination
19   and CDI's role at various points in this litigation. First, in denying in part GEICO's motion to
20   dismiss, the Court concluded that Plaintiff's claims fell outside the exclusive jurisdiction of CDI.
21   *See* ECF No. 64 at 4–9. Second, the Court declined to equitably abstain from deciding Plaintiff's
22   UCL unfair claim, finding that this claim is not better handled by CDI and would not require the
23   Court to decide complex economic policy. *See* ECF No. 130 at 2. The Court reaffirmed this
24   decision on reconsideration, noting that CDI's determination, though strong evidence of GEICO's
25   position, "does not mean that 'the issues in this case would be better handled by an administrative
26   agency.'" ECF No. 185 at 5. Third, in denying GEICO's initial motion for summary judgment,
27   the Court held that CDI's determination did not meet the legal elements of collateral estoppel
28   under California law. *See* ECF No. 214 at 6–7. The Court's analysis of CDI's determination in

this order is not inconsistent with any of its prior orders.  Each of these prior orders conducted legal analyses of CDI's determination and role that are distinguishable from the tethering test that the Court applies in ruling on this motion.  Although the Court considered CDI's determination in the context of abstention and collateral estoppel, the Court has never had the opportunity to consider, as it does now, CDI's determination under the proper standard for a UCL unfair claim and in the context of the facts of this case.

The Court next considers whether Plaintiff has pointed to "specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250 (internal quotation marks omitted).  The Court finds that Plaintiff has failed to meet her burden.  Plaintiff points to five pieces of evidence that she argues create a genuine dispute of material fact:  (1) GEICO's admissions that the GEICO Giveback was created to respond to competitors, rather than to make policyholders whole; (2) GEICO's internal communications stating that the GEICO Giveback was insufficient; (3) GEICO's record profits from 2020 to mid-2021; (4) GEICO's failure to provide relief dating to the start of the pandemic and to policyholders who did not renew their policies until compelled to do so by consumer advocates and CDI; and (5) Allan Schwartz's opinion that total restitution is at least $238 million.  *See* Opp. at 9.  The first, third, and fourth pieces of evidence are not material to the tethering test because they would not affect the outcome of the suit under the governing law.  *See Anderson*, 477 U.S. at 248 (defining "material").  The tethering test requires the Court to determine whether the GEICO Giveback violated the Insurance Code's policy of consumer protection and ensuring that insurance is fair, available, and affordable.  However, GEICO's motivation for implementing the Giveback, its profits, and the fact that GEICO was compelled to extend the Giveback to the start of the pandemic and to policyholders who did not renew their policies are not relevant to whether the Giveback was adequate to protect consumers and ensure fair, available, and affordable insurance rates.  *See Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal.App.4th 1105, 1133 (2014), *as modified on denial of reh'g* (Feb. 27, 2014) ("Traditional fraud requirements, such as intent or actual reliance, are inapplicable to the UCL."); *Kunert v. Mission Fin. Servs. Corp.*, 110 Cal.App.4th 242, 265 (2003) ("[T]he 'unfair' prong of the unfair competition law was not intended to eliminate retailers' profits by requiring them to sell at their

1   cost."). Similarly, although Plaintiff argues that the Court has found genuine disputes of material
2   fact on GEICO's net loss defense and whether the effects of the COVID-19 pandemic dissipated
3   by June 2021, neither dispute is material to the tethering test. Regardless of whether GEICO
4   operated at a net loss or when the COVID-19 pandemic ended, the fact is that CDI has approved
5   the amount that GEICO has refunded as consistent with the directive of the Bulletins and, by
6   extension, the policy and spirit of the Insurance Code.

7      To the extent that Plaintiff's other evidence might be material, it does not create a genuine
8   dispute of fact. ███████████████████████████████████████
9   ███████████████████████████████████████████████████████
10  ███████████████████████████████████████████████████████
11  ███████████████████████████████████████████████████████
12  ███████████████████████████████████████████████████████
13  ███████████████████████████████████████████████████████
14  ███████████████████████████████████████████████████████
15  ███████████████████████████████████████████████████████
16  ███████████████████████████████████████████████████████
17  ████████████████████████████████████████████
18  ███████████████████████████████████████████████████████
19  ███████████████████████████████████████████████████████
20  ████████████████████████████████████ Because Plaintiff relies on early-
21  pandemic evidence that did not make a final determination about the GEICO Giveback or analyze
22  its adequacy in California, Plaintiff's evidence does not create a genuine dispute of material fact
23  regarding whether GEICO was put on notice that the Giveback was insufficient. Similarly,
24  Plaintiff points to her expert's conclusion that COVID-19 pandemic relief should have totaled
25  $733 million and that the Class should recover $238 million in restitution. Opp. at 9. Viewed in
26  the light most favorable to Plaintiff, her expert's finding that the GEICO Giveback was inadequate
27  to reasonably compensate the Class for reductions in claims during the COVID-19 pandemic is
28  merely colorable and not sufficiently probative of the ultimate issue—whether GEICO's conduct

16

violated the policy or spirit of the Insurance Code. *See Liberty Lobby*, 477 U.S. at 249–50 (noting that summary judgment may be granted against a nonmovant whose "evidence is merely colorable, or is not significantly probative" (internal quotation marks omitted)). In fact, Plaintiff's expert does not purport to determine whether the GEICO Giveback was adequate to protect consumers and ensure fair, available, and affordable insurance rates.

In summary, GEICO has pointed the Court to evidence, including CDI's determination that the Giveback was adequate, which negates an essential element of Plaintiff's UCL unfair claim. This evidence establishes that the GEICO Giveback was consistent with the legislatively declared policy captured in Proposition 103 on which Plaintiff's UCL unfair claim relies. Plaintiff has failed to point the Court to material evidence that creates a genuine dispute for trial. Plaintiff's evidence is either immaterial to the tethering test or not sufficiently probative of the adequacy of the GEICO Giveback to the Insurance Code's policy of protecting consumers and ensuring fair, available, and affordable insurance rates to create a genuine dispute of fact. Indeed, considering all of the evidence in the light most favorable to Plaintiff, the Court finds that no reasonable trier of fact could find that GEICO's conduct violated the policy or spirit of the Insurance Code. *Corales*, 567 F.3d at 562. Thus, GEICO is entitled to judgment as a matter of law under the tethering test.

### ii. Balancing Test

Under the balancing test, the Court "weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012). A business practice is "unfair" under this test "when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal.App.4th 861, 886–87 (1999) (quoting *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal.App.3d 509, 530 (1984)).

GEICO argues that if the Court were to consider the balancing test, Plaintiff's UCL unfair claim fails as a matter of law because the undisputed facts do not show that GEICO acted immorally or unscrupulously. Mot. at 8–9. Plaintiff does not make specific arguments under the

balancing test but takes the position that the balancing test is satisfied. Opp. at 6. In addition, Plaintiff's argument that genuine disputes of material fact preclude summary judgment also applies to the balancing test.

        The Court finds that GEICO has met its initial burden to show that Plaintiff does not have enough evidence of an essential element of her UCL unfair claim under the balancing test to carry her ultimate burden of persuasion at trial. *See Nissan Fire & Marine*, 210 F.3d at 1102. First, as discussed above, the GEICO Giveback did not violate public policy. Second, Plaintiff has failed to point the Court to any evidence that would show that GEICO's conduct was unfair under the balancing test. For similar reasons to those stated above, the Court finds that none of Plaintiff's evidence creates a genuine dispute of material fact under the balancing test—Plaintiff's evidence is either immaterial to or is insufficiently probative of whether GEICO's conduct was immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers for a reasonable trier of fact to rule in Plaintiff's favor. The undisputed facts in the record show that GEICO consistently reported its data on the GEICO Giveback to CDI, which CDI reviewed and concluded that GEICO was not required to return any additional premiums. *See* Ward Decl. Ex. C at 19–25; Ward Decl. Ex. D at 27–32; Ward Decl. Ex. I at 51–53; Vocke Deck. Ex. FF at 475. Plaintiff's theory is that GEICO's failure to return a greater amount of premiums is unfair. However, as other courts have astutely observed, the conduct about which Plaintiff complains is "simply how insurance works." *Torrez v. Infinity Ins. Co.*, No. 2:22-CV-05171-SVW-JC, 2022 WL 6819848, at *4 (C.D. Cal. Oct. 11, 2022). Plaintiff exchanged premiums for the contractual shifting of risk of certain liabilities to GEICO. After the parties contracted, GEICO's risk was reduced by the COVID-19 pandemic, but the fact that conditions changed after contracting does not mean that GEICO's conduct was unfair. *See Shively*, 2023 WL 5509069 at *5. In fact, the *Torrez* and *Shively* courts did not have the benefit, as the Court does here, of a CDI determination that the insurer was not required to return additional premiums. Thus, even if Plaintiff is correct that GEICO could have returned a greater amount of premiums in light of the reduction in risk, GEICO's failure to do so on this record is not immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Thus, the Court finds that GEICO is entitled to judgment as

a matter of law under the balancing test.

\* \* \*

Accordingly, the Court finds that, on the record before it, no reasonable trier of fact could find in Plaintiff's favor on her UCL unfair claim, and the Court GRANTS summary judgment to GEICO.

**IV. ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. GEICO's renewed motion for summary judgment (ECF No. 220) is GRANTED because the Court finds that Day's UCL unfair claim fails as a matter of law.

2. GEICO's pending motion to decertify the class (ECF No. 174) is TERMINATED AS MOOT.

Dated: March 18, 2024

_____
BETH LABSON FREEMAN
United States District Judge